A99A1639. CORNELIUS et al. v. MACON-BIBB COUNTY HOSPITAL AUTHORITY et al.
(533 SE2d 420)

POPE, Presiding Judge.

M. L. Crump, Emma Crump's husband, and Dexter Cornelius, as administrator of her estate, brought a wrongful death action against Dr. John Williams, Dr. Alan Stevick, and the Macon-Bibb County Hospital Authority d/b/a Medical Center of Central Georgia ("MCCG") arising out of Mrs. Crump's death at the hospital. The case proceeded to trial, and a jury returned a defense verdict. Mr. Crump and Mr. Cornelius (jointly referred to as "Crump") appeal, questioning four evidentiary rulings, disqualification of a juror, and sufficiency of the evidence.

Mrs. Crump, a 55-year-old woman, appeared at the emergency room ("ER") at MCCG on December 4, 1993, with a complaint of lower abdominal pain and painful urination. She exhibited symptoms of urinary tract infection and was diagnosed as having that. An x-ray of her abdomen was reported as showing air fluid levels in the intestine, which could indicate an ileus, a nonfunctioning portion of the intestine. The significance of this finding was disputed at trial. She was given antibiotics for the infection and sent home.

Mrs. Crump returned to the ER on December 8 with complaints of nausea, vomiting, abdominal pain, and loss of appetite; she reported that she began experiencing these symptoms after taking the prescribed medications. Her medications were changed, and on

December 9, a repeat x-ray again showed air fluid levels in the bowel. Again the significance of this finding was disputed at trial. Her diagnosis for this visit was urinary tract infection and acute gastritis.

On December 22, she returned to the ER a third time with complaints of upper abdominal pain, nausea, and vomiting. She had a normal pulse and temperature, but her blood pressure was now elevated. She had a history of high blood pressure and was on medications. A nurse noted that Mrs. Crump was "moaning." An abdominal x-ray again showed air fluid levels which were read by the ER physician as a mild ileus. The patient was treated for peptic ulcer disease and then discharged.

On Saturday, December 25, at 4:05 p.m. she again came to the ER, this time by ambulance, complaining of continued nausea, vomiting, and abdominal pain. The emergency medical technicians reported that they witnessed episodes of nausea and vomiting. Mrs. Crump's family was with her, and they were upset and wanted something done. This time her pulse was elevated, her blood pressure was up, and her ketone level had increased significantly. There is conflicting testimony concerning whether she was in severe pain and concerning the significance of the ketone level.

An abdominal x-ray showed a soft tissue density in the lower left abdomen. The ER physician, Dr. Meacher (not a defendant in this action), following hospital procedures, called defendant Dr. Williams, a first year surgical resident, for a consultation. (Emergency room physicians have responsibility for the patients while they are in the ER, but a hospital doctor must authorize admitting a patient to the hospital.) Dr. Meacher told Dr. Williams about the patient, that she had been to the ER four times that month, and that she said that nobody was doing anything for her. There is a dispute concerning whether Dr. Meacher told Dr. Williams that he thought Mrs. Crump needed to be admitted and whether they disagreed about admitting her. Before Dr. Williams saw the patient, Dr. Meacher prescribed several medications for the vomiting, some of which may cause drowsiness and ease pain.

Dr. Williams examined the patient and found that she had diffuse, cramping abdominal pain. According to his examination, she did not have signs of more severe pain. He reviewed her medical records for all four visits to the ER, and he saw the mass on the x-ray. Although he did not know what the mass was, he thought that it resembled fecal material in the descending colon and concluded that it was not a finding that needed immediate attention. Dr. Williams diagnosed peptic ulcer disease, gastroenteritis, or gall bladder disease. He then contacted his chief resident, Dr. Stevick, another defendant, and they discussed the case on the telephone. There is an issue of fact concerning whether Dr. Williams told Dr. Stevick about

the unidentified mass on the x-ray. There is also an issue of fact as to whether hospital policies required Dr. Stevick, as the chief resident, to actually examine the patient himself, which he did not do. Thereafter, at about 8:00 that night, Dr. Williams, with Dr. Stevick's approval, discharged Mrs. Crump, with an appointment to return Monday morning for an ultrasound and a visit to the general surgery clinic. There is a dispute about whether hospital procedures required Dr. Williams to obtain the ER doctor's approval for the discharge. The hospital radiologist read the x-ray (after the patient had already left the ER) as showing a "soft tissue density in the lower left quadrant of the abdomen," and he flagged the x-ray for review Monday morning.

On December 27, Mrs. Crump returned to the ER by ambulance, with abdominal pain, nausea, and vomiting. About an hour after admission she had no blood pressure. She was intubated, and an emergency CT scan was done. The CT scan showed loops of small bowel in the area where the mass was on the earlier x-ray. The patient was then taken to the operating room for exploratory surgery. A nearly two-foot-long section of small bowel from the lower left quadrant of her abdomen was removed, a portion of which was dead, gangrenous, and perforated. There was some question at the time of surgery as to whether the remaining bowel was viable. Since there was doubt, and the patient was very ill, the surgeons elected not to reattach the intestine, with the plan to allow the patient to stabilize and to reconnect the bowel in 24 to 48 hours.[1] On December 28 the patient died before an attempt could be made to do the second surgery. The pathologist's report on the piece of bowel was "segmental ischemic bowel with perforation," meaning that the segment of bowel died due to lack of blood flow to that segment.

Experts on both sides agreed that the disease responsible for Mrs. Crump's death is a rare and highly fatal disease that is notoriously difficult to diagnose. They strongly disagreed about when Mrs. Crump was first affected by the disease and about whether it had anything to do with her first two visits to the ER. Further, the plaintiff's expert radiologist characterized the finding on the December 25 x-ray that there was a soft tissue mass as a "subtle finding" and stated that he would not expect a surgeon to see it.

The family brought a wrongful death suit against the hospital, Dr. Williams, and Dr. Stevick, under the theory that failure to admit Mrs. Crump on December 25, in the face of continued abdominal pain, worsening vital signs, and the mass on the x-ray, was a breach of the standard of care and that had she been admitted and more thoroughly examined, surgery would have been performed before the

---

[1] The doctors' choice of this procedure is not at issue in this case.

segment of bowel became gangrenous and perforated, and she would not have died. A jury found for the defendants.

1. Crump asserts the court erred in refusing to allow two hypothetical questions.

(a) During the trial Dr. Stevick was asked the hypothetical question, "whether a patient who has pain out of proportion to the physical findings, nausea, vomiting, tachycardia and an unidentified mass on x-ray should be admitted to the hospital." The court did not allow this question on the ground that there was no evidence in the record on which to base this question, specifically, no evidence that Mrs. Crump had "pain out of proportion to the physical findings."

It is true that "[a]n expert witness is not permitted to give his opinion, in answer to a hypothetical question, based on facts not placed in evidence by other witnesses." (Citations and punctuation omitted.) *Horton v. Eaton*, 215 Ga. App. 803, 806 (3) (452 SE2d 541) (1994); *Kines v. City of Rome*, 220 Ga. App. 732, 733 (470 SE2d 311) (1996). But that requirement is not applicable where the witness "is a defendant in the case and not merely an expert testifying as to the proper standard of conduct." *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 150 (5) (269 SE2d 426) (1980) (decided under former Ga. Code Ann. § 38-1710). "The right of cross-examination, thorough and sifting, which belongs to every party as to the witnesses against him, is especially applicable where the witness is the opposite party to the cause on trial." *Smith v. Davis*, 76 Ga. App. 154, 158 (2) (45 SE2d 237) (1947).

We will not reverse a decision of the trial judge concerning whether to allow a hypothetical question unless there is an abuse of discretion. See *Lefler v. State*, 210 Ga. App. 609, 611 (5) (436 SE2d 777) (1993). But here, the question should have been allowed because the defendant may be thoroughly questioned about his actions and how he might have acted under different circumstances. *Cambron*, 246 Ga. at 150 (5).

We cannot say that the error was harmless. Crump's case is based on several assertions that all place Dr. Stevick at the center of possibly preventing Mrs. Crump's death. Crump claims that: given Mrs. Crump's December medical history and Dr. Williams' lack of experience, Dr. Williams was not qualified to decide whether to admit her; Dr. Stevick was responsible for the decision; Dr. Williams may not have fully communicated Mrs. Crump's history or the x-ray findings to Dr. Stevick during the telephone call; Dr. Stevick should have personally examined the patient, and hospital policies required him to do so; if Dr. Stevick had known the full information and examined Mrs. Crump, he would have admitted her to the hospital on that day; and she would have received life-saving treatment as a result.

Generally, when there is cumulative evidence of the excluded

testimony the error may be harmless. And here, another defense witness was asked the same question. But, the evidence may not be cumulative because "[t]his court cannot speculate as to what may have been [Dr. Stevick's] answer to the [cross-examination] question or its effect on the jury." *Hyles v. Cockrill*, 169 Ga. App. 132, 140 (312 SE2d 124) (1983).

Further, Dr. Stevick made several admissions, which combined with the excluded question, could have gone a long way toward proving part of Crump's case. Dr. Stevick testified that if Dr. Williams had mentioned that there was an unknown mass shown on the x-ray, he — Dr. Stevick — "would have said, well, hold on, I'll be there or bring it up and let me look at it, whatever I'm doing." And he testified:

> Certainly, if you're implying that a patient has been seen four times for an unexplained abdominal pain that is worsening and their clinical situation is worsening, the fourth time they came in with what I thought was a related worsening picture, I would keep that patient in the hospital.

This statement did not include all the facts related to Mrs. Crump's condition that were included in the question excluded by the court. If Dr. Stevick had answered that he would admit someone to the hospital who had these symptoms, that would strengthen Crump's case.

Although *Hyles* is concerned with hypothetical questions posed to an expert witness, we find its reasoning also applicable here. Where "the subject matter of the hypothetical question . . . [is] a highly contested and vital issue at trial, . . . 'the exclusion of competent testimony in respect thereto is a substantial error, and not a mere technical one.' [Cit.]" *Hyles*, 169 Ga. App. at 140. Also,

> A material abridgement or denial of the substantial right of cross-examination of opposing witnesses is material error and requires the grant of a new trial. As a general rule it is better that cross-examination should be too free than too much restricted.

(Citations and punctuation omitted.) Id.

Cases cited by the defendant for the proposition that the evidence would have been cumulative are not on point, in part because they concern nonparty expert witnesses and in part because of their facts. *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343, 351 (6) (270 SE2d 883) (1980) (proffer of excluded direct testimony by one Firestone expert witness was the same as given by another witness and substantially the same as given by at least two other witnesses); *Warmack v. Mini-Skools, Ltd.*, 164 Ga. App. 737, 738 (1) (297 SE2d 365) (1982) (testimony from the same witness duplicated the

excluded direct testimony from the party's own witness). Here, the excluded testimony is the unknown answer of an important cross-examination question posed to one of the principal defendants. It was harmful error to exclude the question.

(b) During the trial, Crump asked Dr. McGinnis, the defendants' expert, "whether hospitals all over the country admit people to find out what is causing *abdominal pain.*" The court excluded the question because Dr. McGinnis earlier answered a similar question that asked "whether people were admitted to a hospital to find out what was causing a *problem.*"

A defendant is entitled to thorough and sifting cross-examination, OCGA § 24-9-64, and the scope of such examination is within the sound discretion of the trial court. This discretion will not be disturbed on appeal unless manifestly abused. *Sanders v. State*, 181 Ga. App. 117, 121 (3) (351 SE2d 666) (1986).

The exchange between Crump's counsel and Dr. McGinnis went as follows: "Q: Is it true that people are admitted to hospitals to find out what is causing *a problem*? A: When it's indicated." Then Crump's counsel asked a series of questions about the December ER visits for abdominal pain. Then he asked,

Q: Now, Doctor, isn't it true that patients are admitted to hospitals all over this country to find out what is causing *abdominal pain*?
MEEKS: Objection. Asked and answered. I think he's already covered that and the Doctor said "when indicated."
COURT: I agree. Next question.

In this setting, the word "indicated" means to "point to as the required treatment." Webster's New World Dictionary (3rd college ed. 1988), p. 687. Thus, Dr. McGinnis' answer to the first question can be understood as people are admitted to the hospital if a "problem" points to admission as the required treatment. The second question asked whether people are admitted to the hospital when they have "abdominal pain." It is true that Dr. McGinnis could have answered either yes, no, or "when indicated." But, common sense tells us the answer to that question can only be "when indicated." Everyone has abdominal pain from time to time, and it is a matter of common sense that hospitalization is not always required. Thus, the question was too general and not sufficiently tailored to the facts to elicit a meaningful answer. The two questions were sufficiently similar in this regard, and the court did not abuse its discretion in prohibiting an answer to the second question.

2. Crump also contends that the verdict is against the weight of the evidence and the principles of justice and equity and that, there-

fore, he is entitled to a new trial. Because we reverse and remand for a new trial, we need not address this enumeration.

3. We next address enumerations of error likely to recur on retrial.

Crump asserts that allowing testimony of the Crumps' temporary separation was error under *Wright v. Dilbeck*, 122 Ga. App. 214, 216 (2) (176 SE2d 715) (1970).

The trial court granted Crump's motion in limine excluding testimony about the Crumps' temporary separation and Mr. Crump's subsequent remarriage, provided however, that Crump did not open the door to such testimony. In the opening statement, Crump's attorney said, "Emma Crump was a loving mother, a wonderful mother. She was a loving wife. She and Mr. Crump had been together since 1963." The court then reversed its ruling to the limited extent of allowing testimony of the simple fact that there was a period of time the two were separated. On cross-examination, Mrs. Crump's daughter confirmed that there was a period of about three months that Mr. Crump lived with someone else, but by the time Mrs. Crump died, Mr. and Mrs. Crump had reconciled.

OCGA § 51-4-2 provides that the surviving spouse in a wrongful death action may recover the full value of the life of the decedent. *Wright* holds that marital problems do not reduce the measure of damages or the damages recoverable. *Wright*, 122 Ga. App. at 216 (2). And, Crump had dismissed his claim for loss of consortium. Thus, the information was irrelevant and inadmissible. But the court had discretion to allow limited testimony in response to Crump's opening statement that the couple had been together since 1963. The court fashioned a limited remedy to the limited opening of the door regarding how long the couple had been together. If the statement had been made in testimony, it could have been impeached. OCGA § 24-9-82. We find no abuse of discretion.

4. The trial court refused to allow Crump to publish to the jury the autopsy pictures of Mrs. Crump's bowel fearing that they were gruesome and would be unduly prejudicial. This decision was not error.

OCGA § 24-2-1 provides that "[e]vidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded." Questions of relevancy are left to the sound discretion of the judge. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 160 (2) (256 SE2d 916) (1979). Autopsy photographs are particularly likely to be gruesome and should be carefully screened for relevancy. *Ramey v. State*, 250 Ga. 455, 456 (1) (298 SE2d 503) (1983). Autopsy photographs made by the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only after the autopsy. *Brown*

*v. State*, 250 Ga. 862, 866-867 (5) (302 SE2d 347) (1983). The court is permitted to balance the relevancy of the photographs against their tendency to be inflammatory and prejudicial. *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 779-780 (13) (403 SE2d 235) (1991).

In the present case, there was some question about the viability of the remaining bowel. The defendants contend that the disease Mrs. Crump had could have killed her anyway because it could affect the remaining bowel. Dr. Parker testified that the remaining bowel was viable, but he did not refer to the photographs. The jury was never given any explanation for what they would see in the autopsy photographs. Crump contends that a layperson could tell from the photographs that the remaining bowel was viable. However, after reviewing the photographs and knowing that the patient was dead at the time they were made, this Court is certain that a layperson could not make such a judgment without expert assistance. In addition, Crump was able to sufficiently question the pathologist about the condition of the bowel at the time of the autopsy. Given the gruesome and inflammatory nature of the photographs, the trial court in the present case did a proper balancing of the risk of undue prejudice versus the relevance of the pictures. *O'Neal*, 198 Ga. App. at 779-780.

5. During the trial, the x-rays and CT scans were stipulated into evidence. But the trial court refused to allow them to go into the jury room during deliberations, and Crump asserts error. Crump, however, did not object at the time the judge made the decision and thereby waived review on appeal. However, given that there will be a new trial, we will address the issue.

"The object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence." OCGA § 24-1-2. Further:

> Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.

(Citations and punctuation omitted.) *Norman v. State*, 197 Ga. App. 333, 336 (4) (398 SE2d 395) (1990). Any evidence is relevant that "logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant." (Citations

and punctuation omitted.) *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 338 (3) (c) (319 SE2d 470) (1984). "But the trial judge may exercise discretion in excluding relevant evidence upon a determination that its probative value is substantially outweighed by the risk that its admission will create a substantial danger of undue prejudice or of misleading the jury. [Cit.]" *Kicklighter v. Woodward*, 267 Ga. 157, 161 (4) (476 SE2d 248) (1996).

Here, the x-rays and CT scans were central to the dispute between the parties. They were not merely demonstrative evidence. Testimony from both Crump's and the defendants' experts described and explained the contents of the x-rays and CT scans. Although a layperson is not competent to read and analyze these items for the purpose of diagnosing a patient, it is possible for a layperson to look at them for the purpose of making simple observations and verifying the witnesses' testimony. However, one could argue that they would confuse the jury. It is within the court's discretion to determine whether the possible prejudicial effect outweighs the relevance of the evidence. *Kicklighter*, 267 Ga. at 161 (4). If there is no showing of prejudicial effect, the evidence should be admitted and submitted to the jury for their deliberations.

6. Crump's remaining enumeration of error is moot.

*Judgment reversed. Miller, J., concurs. Smith, J., concurs specially.*

SMITH, Judge, concurring specially.

I fully concur in the result reached by the majority and in Divisions 1 (b) through 6. I write specially because I cannot concur fully with the majority's analysis in Division 1 (a). In my view, regardless of what Dr. Stevick answered, his answer would have been cumulative, because both sides presented testimony going to this issue. Nevertheless, I agree that the hypothetical posed to Dr. Stevick and excluded by the trial court went to an aspect of the case that was "highly contested and vital," *Hyles v. Cockrill*, 169 Ga. App. 132, 140 (312 SE2d 124) (1983), and the case therefore must be remanded for a new trial.

DECIDED MARCH 30, 2000 —
RECONSIDERATION DENIED APRIL 13, 2000 — 

*Ruffin & Dell, Charles L. Ruffin, Adrienne Goebel,* for appellants.

*Pursley, Howell, Lowery & Meeks, Roy H. Meeks, Jr., Tisinger, Tisinger, Vance & Greer, Kevin B. Buice,* for appellees.