## A03A0515. DURHAM v. GIPSON.
(583 SE2d 254)

JOHNSON, Presiding Judge.

This appeal is from a trial court's order denying a mother's petition to modify custody of her minor children.

Michelle Durham ("the mother") and Arlie Gipson ("the father") were divorced in Virginia in 1997. After a custody dispute, the father was granted primary physical custody of the couple's two minor children.[1] The judgment was domesticated in Richmond County, Georgia, after the father and the children moved to this state.

On April 25, 2001, the mother, still a resident of Virginia, filed a petition in Georgia for modification of custody. She based her petition on the fact that Maria, the older child, was now 14 years old and had decided she wanted to live with her mother.[2] The mother further asserted that Brandy, who was now ten, also expressed an interest in

---

[15] See id. at 662 (2).
[16] (Punctuation omitted.) *State v. Hammang,* 249 Ga. App. 811 (549 SE2d 440) (2001).
[1] Maria Gipson was born on April 8, 1986; Brandy Gipson was born on November 4, 1990.
[2] The petition states her age as 14, though it appears she was 15 at the time the petition was actually filed.

living with her mother. The trial court appointed a guardian ad litem to evaluate the petition.

In a temporary order entered on August 8, 2001, the trial court transferred custody of Maria to the mother based upon the trial court's findings that the older child, who was of the age of election under Georgia law,[3] had elected to live with her mother, and that the mother was a fit and proper custodial parent. The trial court deferred making a determination as to the custody of the younger child until the guardian ad litem could complete her investigation.

In a report dated October 29, 2001, the guardian ad litem submitted her findings and recommendations. In the report, the guardian ad litem noted that the girls told her that they distrusted guardians because when the divorce was pending years earlier, they told the guardian ad litem assigned to that case that they wanted to live with their mother; yet, the court placed them with their father.

The guardian assigned to the instant case further reported that the younger child wants to live with her mother, and that her longing sometimes causes her to cry at night. The younger child has no complaints about her father, but wants to be able to talk to and live with her mother. Both children told the guardian they miss each other. Until the court-ordered separation of August 2001, the children always lived together. According to the guardian, both the mother and the father have been good parents, and both offer good homes to the girls. The father's household includes a new wife and her two minor sons. The guardian opined that the girls have reached a time in their lives when they need their mother, and that they have issues "that can only be discussed with a mom." The guardian added that the two girls have bonded with each other and should not be separated, and recommended that the younger child be allowed to join her sister in Virginia with their mother.

The case came on for what was to be a final hearing on November 6, 2001. The parties and attorneys were present, and the court had before it the guardian ad litem's report. On December 21, 2001, after the hearing, the trial court entered a "Supplemental Temporary Order." In the order, the trial court awarded primary physical custody of the younger child to the mother, making a specific finding that the custodial selection of the older child was a material change in circumstances such that custody of the younger child should be addressed by the court. The judge also found that the guardian had made a thorough investigation and was aware of Brandy's preference

---

[3] OCGA § 19-9-1 (a) (3) (A) provides that a child 14 years of age or older has the right to select the parent with whom he desires to live. The selection is controlling unless the parent selected is determined not to be a fit and proper person to have custody.

which, although not binding, would be considered by the court. A final hearing was scheduled for August 15, 2002.

On August 13, 2002, the guardian submitted her final report. In it, she reported that the younger child was happy, well adjusted, and thriving in her mother's care, and that the child was excited to be and desired to remain in the mother's primary custody. The guardian recommended that the court leave the children together in the mother's custody. In the guardian's opinion, the younger child would be devastated if she was compelled to return to Georgia.

The final hearing, on August 15, 2002, was attended by the attorneys and the guardian ad litem. Per the agreement of the parties and the trial court, no witnesses were to testify as the parties did not want to create controversy within the family; they felt such controversy would harm the relationship of the parents and children regardless of the trial court's ruling. The trial court did allow testimony from one witness, the father's adult daughter from a prior marriage. The father's daughter testified that she spoke with the younger child during her summer visitation with their father and that the child stated that she did not want to have to choose between her mother and father — that she just wanted the court to decide. The mother's attorney did not cross-examine the witness or present any witnesses.

At the end of the hearing, the trial court determined that it wanted an unbiased opinion from someone outside of the family as to the younger child's preference. It was decided that the child's former school teacher would be contacted and asked to elicit Brandy's preferences. However, this did not prove to be helpful as the child did not confide any preference to the teacher.

In a final order entered on September 5, 2002, the trial court ruled that there was no evidence of a material change in circumstances to justify changing custody from the father to the mother. The court found that the father had been an exemplary parent, and his current wife had been an exemplary stepmother. The court noted the guardian ad litem's findings, including that the children had thrived under the father's care, and also that the mother had been a good parent to the children. The court stated that it must consider the younger child's wishes, but that it was not bound by those wishes. The court added that the guardian had found that the younger child wished to live with the mother, but that the father's adult daughter said that it makes no difference to Brandy where she lives.

The court concluded that there was no evidence to show the existence of a significant change in circumstances that adversely affected the younger child sufficiently to change custody to the mother.

The court awarded primary physical custody of the older child to the mother, but left primary physical custody of the younger child

with the father. The court included a provision that the mother's visitation with the younger girl must be equivalent in time to the father's visitation with the older child; that visitation would be exercised with the girls being together; that the mother's visitation with the younger child would occur when the older child is present; and that the father's visitation with the older child will take place when the younger child is present. We granted the mother's application for discretionary review of the final order.

1. The mother contends that the trial court erred in concluding that she had not shown a sufficient change in condition to warrant a change of custody as to the younger child. We agree with the mother, and reverse and remand the case for reconsideration by the trial court.

A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award.[4] If there has been such a change, then the court should base its new custody decision on the best interest of the child.[5] If the record contains any reasonable evidence to support the trial judge's decision on a petition to change custody, it will be affirmed on appeal.[6] Although trial courts have wide discretion in change of custody proceedings, that discretion is not without limits.[7]

Here, it is clear from the record that the trial court struggled with the issue of whether an election by a child over the age of 14 to live with a particular parent is sufficient to justify changing custody of a younger sibling to that parent, especially when both parents provide healthy home environments for the children. We understand the trial court's struggle, inasmuch as when a child is receiving good parenting, there would seem to be no compelling reason to change custody to another parent.

But the Supreme Court of Georgia has held that a change of custody of one sibling due to an election is sufficient as a matter of law to constitute a material change in circumstances as to the other siblings.[8] Once that material change is established, as it was in this instance, then the trial court has discretion when deciding whether it

---

[4] *Templeman v. Earnest*, 209 Ga. App. 557, 558 (434 SE2d 106) (1993).

[5] *Martin v. Greco*, 225 Ga. App. 752, 753 (1) (484 SE2d 789) (1997).

[6] Id.

[7] *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000).

[8] *Westmoreland v. Westmoreland*, 243 Ga. 77, 79 (252 SE2d 496) (1979); *Parkerson v. Parkerson*, 167 Ga. App. 265, 266 (2) (306 SE2d 97) (1983). See *Lamb v. Lamb*, 230 Ga. 532, 533 (198 SE2d 171) (1973) (trial court did not abuse its discretion in changing custody of both children based on change of circumstances where child over 14 elected to live with mother, and trial court found it would be in best interests of both children to be raised in same home).

is in the best interest of the remaining sibling, Brandy, to live with one parent or the other. This makes sense, because the court's duty in custody cases is to determine what is in the best interests of the children, and what will best promote their welfare and happiness.[9] Relevant changes include any new and material change in the circumstance of either parent or of the children, which might affect the children's health, happiness, or welfare.[10] Being separated from one's sibling can take an emotional toll on a child, and it may be in the best interest of a child to be permitted to remain in the same household as his sibling.[11]

When the mother filed the petition to change custody, the older child, who had reached the age of 14, had selected her mother as the parent with whom she wished to live. Therefore, the mother had a right to custody of the older child which could only be defeated by a showing of present unfitness.[12] It is undisputed that the mother is a fit parent. And, the guardian ad litem recommended that the younger child be placed with her mother since, in her opinion, the child has a need to be with her mother and should not be separated from her sister, with whom she has bonded and has spent nearly her entire life. Thus, the trial court erred in finding that there was no evidence warranting a change in custody of the younger child.

Of course, this court is mindful that the difficult task of assigning the custody of children lies squarely upon the shoulders of the trial judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility.[13] Therefore, we emphasize that we do not intend to restrict or interfere with the exercise of the sound discretion of a superior court judge who has seen the witnesses testify and studied the situation carefully and thoughtfully during the two years in which the petition has been pending. However, when the order appealed from shows on its face that the trial judge based his decision on an error of law, then this court must reverse the judgment and remand the case to him in order that he may properly exercise his discretion.[14] The evidence in this case was sufficient under the law to authorize the court to modify the custody of the younger child.[15] In concluding that the grounds relied upon by the mother did not authorize a modification of the original judgment, the trial court erred. Therefore, we reverse the

---

[9] OCGA § 19-9-3 (a) (2).

[10] See *Handley v. Handley*, 204 Ga. 57, 59 (48 SE2d 827) (1948).

[11] See generally *Kennedy v. Adams*, 218 Ga. App. 120, 122 (2) (460 SE2d 540) (1995) (physical precedent only).

[12] OCGA § 19-9-1 (a) (3).

[13] *Arp v. Hammonds*, 200 Ga. App. 715, 717 (409 SE2d 275) (1991).

[14] *Hight v. Butler*, 230 Ga. 533, 534-535 (1) (198 SE2d 169) (1973).

[15] See *Arp*, supra.

judgment and remand the case so that the trial court may correctly apply the law. In so doing, we do not intimate what the judgment should be.[16]

2. The mother challenges certain visitation provisions set forth in the trial court's final order. The trial court is vested with discretion regarding visitation.[17] In exercising its discretion, the trial court is to consider such issues as the best interests of the children, and avoid placing unnecessarily burdensome limitations on the exercise of either parent's right of visitation.[18]

3. According to the mother, the trial court acted improperly in calling the father's adult daughter as a witness in the final hearing. Specifically, she asserts that the trial court announced at the November 2001 conference that the final hearing would be held between the attorneys and the guardian ad litem, that the parties' positions would be presented by briefs, and that there would be no witnesses present. However, when the final hearing was held, the court allowed the father's adult daughter to testify. The witness testified that the younger child told her that she did not want to make the custody decision, and that she did not care where she lived. The mother complains that she was not permitted to cross-examine the witness or present her own witnesses at the hearing. However, the mother did not object to the procedure below. Her failure to object amounts to a waiver.[19]

*Judgment reversed and case remanded. Eldridge and Mikell, JJ., concur.*

DECIDED JUNE 11, 2003.

*Susan M. Reimer, Jean M. Kutner*, for appellant.
*Surrett & Coleman, Carl J. Surrett*, for appellee.

---

[16] See *Hight*, supra at 535.
[17] See *In the Interest of R. E. W.*, 220 Ga. App. 861, 862 (471 SE2d 6) (1996).
[18] See *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001).
[19] See generally *Maddox v. Elbert County Chamber of Commerce*, 191 Ga. App. 478, 480 (1) (a) (382 SE2d 150) (1989).