A07A2218. SIMMONS et al. v. WILLIAMS.
(660 SE2d 435)

BLACKBURN, Presiding Judge.

In this child custody case, appellant Tyranius Simmons is the father of T. A. S., a minor child, and appellant Paula Benton is the child's paternal grandmother. Appellee Shaunda Lester Williams is the child's mother. After conducting a hearing, the trial court transferred custody of the child from the grandmother's care to that of the mother. We granted the grandmother's and the father's application for discretionary review of the court's order. For the reasons that follow, we reverse the judgment and remand this case to the trial court for additional proceedings consistent with this opinion.

In custody disputes between a parent and a third party,[1] Georgia law recognizes a statutory presumption in favor of parental custody. OCGA § 19-7-1 (b.1). The third party may overcome this presumption

---

[1] Third parties in this context are limited to a child's grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent. OCGA § 19-7-1 (b.1).

by establishing that an award of custody to the parent would not be in the best interest of the child. Id.; *Clark v. Wade.*[2] In order to make this showing,

> the third party must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent. Once this showing is made, the third party must then show that an award of custody to him or her will best promote the child's welfare and happiness.

Id. at 599 (V).

The record in this case reflects that T. A. S. was born on March 4, 1999 to his mother and father when both were very young. Consequently, the child had been in the grandmother's care and custody since he was ten months old.[3] The mother did not provide any support for the child during that time.

On March 9, 2006, the grandmother and the father filed an Emergency Petition for Legitimation and Immediate Custody after a dispute between these individuals and the mother resulted in the mother's removing the child from the grandmother's care. The trial court held a hearing on the grandmother's and the father's motion, after which the court entered an interim temporary order legitimating the child and awarding custody of the child to the grandmother.[4] The order granted liberal visitation rights to the mother.

On March 29, 2006, the parties reached an agreement whereby the grandmother would retain temporary custody of the child and the mother would exercise extended visitation rights. The trial court also ordered at that time the appointment of a guardian ad litem to represent the interests of the child. In its order of appointment, the trial court stated:

> Should the issue of custody or visitation be tried, the Guardian ad Litem shall be classified as an expert on the family at issue for the limited purpose of presenting to the Court the results of his/her investigation, including a recommendation as to what is in the child[ ]'s best interest. In order to

---

[2] *Clark v. Wade*, 273 Ga. 587, 596-599 (IV) (544 SE2d 99) (2001).

[3] The father is on active duty in the United States military. During the four years proceeding the trial, he was stationed approximately 120 miles from the grandmother's home, and spent one year deployed in Baghdad. He was able to spend weekend visits with T. A. S.

[4] During these proceedings, the mother alleged – and DNA tests later confirmed – that the father also was the father of her second child, a fact previously unknown to the father. During these proceedings, the father legitimated the second child, although the custody of that child is not at issue in this case.

perform his/her functions, the Guardian ad Litem shall have the full right and authority to completely investigate all aspects of the case and to interview all parties and other persons with an interest in the custody, visitation, maintenance and/or education of the minor child[ ].

The issue of custody was tried on December 20, 2006. At the trial, the grandmother testified that the mother's visitations with the child since the March 29 hearing had been sporadic. Although the agreed-upon visitation schedule allowed the mother to keep the child every weekend, the grandmother testified that the mother had only taken advantage of that opportunity one month out of the preceding nine months. During five of the remaining eight months, the grandmother testified that the mother had only kept the child for one weekend or less. The mother did not become involved in the child's school-related activities, did not meet with the child's teachers or attend parent-teacher conferences, and did not attend P.T.A. meetings.

The mother, appearing pro se, disputed the grandmother's testimony regarding visitation to some degree, stating that she did not have her calendar but believed that she had kept the child at least two weekends per month during the interim time period. She further explained that she did not want to interfere with the child's pre-planned school activities and that she had been busy moving during a portion of that time.

During their case-in-chief, the father and the grandmother attempted to call the appointed guardian ad litem as a witness. Reasoning that the guardian was an officer of the court, the trial court did not allow them to call him as a witness. Nor did the trial court allow them to question him at any time regarding the findings of his investigation.

At the close of the parties' evidence, the guardian presented his findings to the trial court. He expressed concern that the mother had been only "marginally involved" with the child and had not taken the opportunity to establish a strong bond with the child through consistent weekend visits. He questioned whether the time that the child did spend with the mother was sufficient to establish a substantial bond. He nonetheless noted that the mother cared for the father's other child and stated that he did not have any concerns regarding her financial fitness or the fitness of her home. In conclusion, the guardian declined to express an opinion as to whether the child would suffer harm if returned to the mother, but concluded that the child's interests would be best served if he remained with the grandmother.

The trial court ruled from the bench that the father and the grandmother had not established that the child would be harmed if he was returned to his mother's care and, therefore, awarded custody to

the mother. The court then ordered, without hearing any testimony or receiving any evidence on the issue, that the father pay child support in an amount to be determined by the United States Army and in the form of an allotment. In its final written order, the trial court included the following language:

> No party shall have overnight personal guests of the opposite sex to whom they are not married or related by blood or marriage while the minor children are in the home during periods of physical custody and/or visitation.

1. The father and the grandmother first argue that the trial court erred in depriving them of the opportunity to question the guardian ad litem regarding the results of his investigation. We are constrained to agree.

Under Georgia law, "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." OCGA § 24-9-64. This right is "a substantial right, the preservation of which is essential to a proper administration of justice, and extends to all matters within the knowledge of the witness, the disclosure of which is material to the controversy." (Punctuation omitted.) *Owens v. Shugart.*[5] See *Cornelius v. Macon-Bibb County Hosp. Auth.*;[6] *Smith v. Davis.*[7] Although a guardian ad litem technically is not a "witness called against" a party in a custody dispute, the Uniform Superior Court Rules also provide that a guardian ad litem "shall be subject to examination by the parties and the court." USCR 24.9 (7). See *Coastal Plains Trucking Co. v. Thomas County Fed. S & L Assn.*[8] (Uniform Superior Court Rules control in the absence of conflicting substantive law). See also *In re Motion of Atlanta Journal-Constitution.*[9]

Here, the burden of proof was on the father and the grandmother to establish that the child would be harmed if returned to the mother and that it was in the best interest of the child to remain with the grandmother. *Clark*, 273 Ga. at 598 (IV). Yet the trial court completely foreclosed their opportunity to examine the guardian ad litem, thereby depriving them of the opportunity to establish facts in

---

[5] *Owens v. Shugart*, 61 Ga. App. 177 (1) (6 SE2d 121) (1939).

[6] *Cornelius v. Macon-Bibb County Hosp. Auth.*, 243 Ga. App. 480, 483-485 (1) (a) (533 SE2d 420) (2000).

[7] *Smith v. Davis*, 76 Ga. App. 154, 158 (2) (45 SE2d 237) (1947).

[8] *Coastal Plains Trucking Co. v. Thomas County Fed. S & L Assn.*, 224 Ga. App. 885, 886-887 (482 SE2d 493) (1997).

[9] *In re Motion of Atlanta Journal-Constitution*, 269 Ga. 589 (502 SE2d 720) (1998).

support of their position that the child should remain in the grand-mother's custody. We must conclude that this deprivation resulted in the denial of a substantial right and thus warrants the grant of a rehearing on the issue of custody. See *Cornelius*, 243 Ga. App. at 484-485 (1) (a); *Smith*, 76 Ga. App. at 158 (2); *Owens*, 61 Ga. App. at 177 (1). See also *Landsberg v. Powell*[10] (the violation of a Uniform Superior Court Rule can result in a reversal of the trial court's judgment).

Our reversal of the trial court's order renders moot appellants' remaining enumerations of error with the exception of the following issues, which are likely to recur on rehearing.

2. The father and grandmother argue that the trial court erred in failing to include written findings in its award of child support, ordering instead only that child support "be paid by military allot-ment within the statutory guidelines as provided in [OCGA §] 19-6-15 et seq." We agree with appellants.

The trial court's order failed to specify the amount of child support to be paid and further failed to "include a written finding of the gross income of the father and the mother and the presence or absence of special circumstances in accordance with subsection (c) of [OCGA § 19-6-15]."[11] (Punctuation omitted.) *Eleazer v. Eleazer.*[12] The trial court's failure to include these requisite findings constitutes reversible error. Id. at 483; *Esser v. Esser.*[13] On remand, the trial court is instructed to award child support in a manner consistent with the dictates of OCGA § 19-6-15.

3. Lastly, the father and the grandmother challenge the provision of the trial court's order that prohibits any party from having over-night guests of the opposite sex during periods of physical custody of and/or visitation with T. A. S. or his sister. The order does not prohibit all contact with unmarried or unrelated companions; it is more narrowly drawn to protect the children from exposure to certain conduct by either parent, i.e., having overnight stays with unrelated members of the opposite sex. Compare *Arnold v. Arnold*[14] (an order prohibiting "the children from *any contact* with a certain named friend of" the wife, without any evidence that mere exposure to the third party would have an adverse effect on the children, is an abuse

---

[10] *Landsberg v. Powell*, 278 Ga. App. 13, 14-15 (627 SE2d 922) (2006).

[11] OCGA § 19-6-15 was amended subsequent to the trial of this case. See Ga. L. 2005, Act 52, § 5, effective January 1, 2007. Regardless, the current version of the statute also requires that the trial court include factual findings in a judgment awarding child support. See OCGA § 19-6-15 (c) (2).

[12] *Eleazer v. Eleazer*, 275 Ga. 482, 482-483 (569 SE2d 521) (2002).

[13] *Esser v. Esser*, 277 Ga. 97, 99 (586 SE2d 627) (2003).

[14] *Arnold v. Arnold*, 275 Ga. 354 (566 SE2d 679) (2002).

of discretion) (emphasis supplied). The condition is clearly intended to preclude potential sexual relations by either of the parties with unwed partners in the presence of the children, a type of limitation within the discretion of the trial court.

*Judgment reversed and case remanded. Ruffin, J., concurs. Bernes, J., concurs specially.*

BERNES, Judge, concurring specially.

I concur fully in Divisions 1 and 2 of the majority opinion, but I respectfully disagree with the analysis in Division 3, which addresses the provision of the trial court's order prohibiting any party from having overnight guests of the opposite sex during periods of physical custody of and/or visitation with T. A. S. or his sister. Because this prohibition is unenforceable under binding precedent of the Supreme Court of Georgia and this Court, I believe we are constrained to conclude that the trial court abused its discretion in imposing it upon the parties.

While a trial court has discretion in imposing restrictions upon visitation, that discretion is not unlimited. See, e.g., *Maloof v. Maloof*, 231 Ga. 811, 812 (6) (204 SE2d 162) (1974); *Stewart v. Stewart*, 245 Ga. App. 20, 22 (2) (537 SE2d 157) (2000). "In exercising its discretion, the trial court is to consider such issues as the best interests of the children, and avoid placing unnecessarily burdensome limitations on the exercise of either parent's right of visitation." (Footnote omitted.) *Durham v. Gipson*, 261 Ga. App. 602, 607 (2) (583 SE2d 254) (2003).

Here, the trial court abused its discretion because the visitation restriction is unduly burdensome. As an initial matter, contrary to the majority's assertion, the restriction is not "narrowly drawn to protect the children from exposure to certain conduct by either parent, i.e., having overnight stays with unrelated members of the opposite sex." Rather, as written, the restriction is overly broad; for example, it would prohibit a parent from having an out-of-town married couple with whom he or she is friends from staying overnight at the parent's home when the child is present.

In any event, such a restriction is not authorized where, as here, no evidence of present or future harm to the child was presented in the trial court. Indeed, during the trial of the case, this issue of overnight guests was never discussed. Nor was there any accusation or evidence presented that the parties involved had ever engaged in inappropriate behavior with members of the opposite sex in the child's presence, or that the child had or likely would be harmed by

exposure to such overnight guests.[15] "In the absence of any evidence that exposure to a third party will have an adverse effect on the best interests of the children, a trial court abuses its discretion by prohibiting a parent from exercising his or her custodial rights in that person's presence." (Citation omitted.) *Arnold v. Arnold*, 275 Ga. 354 (566 SE2d 679) (2002). See also *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001) (reversing order prohibiting visitation in the presence of father's cohabiting girlfriend when there was no record evidence that the relationship had or would likely have a deleterious effect on the children).[16] In light of this precedent, I believe we must conclude that the trial court abused its discretion in imposing the challenged visitation restriction. *Arnold*, 275 Ga. at 354; *Brandenburg*, 274 Ga. at 184 (1).

DECIDED MARCH 27, 2008.

*Celeste F. Brewer*, for appellants.
Shaunda L. Williams, *pro se*.

---

[15] Compare *Hansen v. Hansen*, 650 S2d 917, 918 (Ala. Civ. App. 1994) (affirming overnight visitation restrictions prohibiting the mother from allowing any unrelated male to spend the night while the child was visiting based on evidence that the "mother's boyfriend [had] severely frightened the boy") (punctuation omitted); *Miller v. Hawkins*, 549 S2d 102, 103 (Ala. Civ. App. 1989) (lower court did not abuse discretion in prohibiting overnight visitation with the mother who had live-in companion when child exhibited signs consistent with sexual abuse); *Simonson v. Simonson*, 292 NW2d 12, 13 (Minn. 1980) (upholding restriction prohibiting visitation with mother when her boyfriend was present, based on her boyfriend's prior convictions for sexual offenses); *Robison v. Robison*, 722 S2d 601, 605 (Miss. 1998) (restrictions on overnight visitation upheld based upon undisputed testimony that child was visibly traumatized by visitation with father and girlfriend); *Dilworth v. Dilworth*, 685 NE2d 847, 849 (Ohio App. 1996) (reversing judgment for other reasons, but noting that trial court's order disallowing the mother from having her boyfriend spend the night in her home when the children were visiting was consistent with Ohio law, given father's testimony that the children were confused about "a lot of different men . . . staying overnight with their mom" and that they would become "weepy," would "start to cry," and would suffer a "depressed mood" as a result); *Dile v. Dile*, 426 A2d 137, 142 (Pa. Super. 1981) (holding that mother could not exercise her visitation privileges when her boyfriend was present based on his prior convictions for multiple offenses, including armed robbery, assault, and battery).

[16] Cf. *Hayes v. Hayes*, 199 Ga. App. 132, 133 (404 SE2d 276) (1991) (affirming the trial court's finding that there was no change in material circumstances justifying a modification in custody although both parents were involved in meretricious relationships, given that there was no evidence of harm to the child); *Livesay v. Hilley*, 190 Ga. App. 655, 656-657 (2) (379 SE2d 557) (1989) (mother's cohabitation provided no ground for modifying custody absent evidence of harm to the child).