**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

October 23, 2025

# In the Court of Appeals of Georgia

A25A1348. KIMBRO v. WARREN.

BARNES, Presiding Judge.

In *Kimbro v. Warren*, 374 Ga. App. 72 (911 SE2d 344) (2025), this Court vacated the trial court's custody order modifying primary physical custody from joint custody between the mother, Sheinke Kimbro, and the father, Tito Warren, and awarding primary physical custody to Warren. We remanded the case for the trial court to make findings on the threshold issue of material change in circumstances warranting a change in custody. Id. at 74 (2). In vacating the order and remanding the case, this Court observed that "[t]he trial court's mere statement in its order that it had reviewed the [guardian ad litem's] report did not amount to a finding that there

had been a material change in circumstances authorizing a modification of the prior joint custody arrangement." Id.

Subsequent to the remand and without holding a new hearing, the trial court issued a new final order explicitly finding a material change in circumstances justifying the change in custody, namely,

> the complete and total breakdown of [Kimbro] and [Warren's] ability to co-parent. The court determines this material change affects the welfare of the children because the conflict between the parties has escalated to a physical altercation involving a weapon while in the presence of the children. Further, a joint physical custody arrangement requires mutual cooperation and flexibility, which the evidence and testimony illustrates the parties are not capable of doing. To further compound these issues, [Kimbro] must now report to work in the State of Oregon each month.

The trial court again granted the parties joint legal and decision-making authority, and provided that Warren would have primary physical custody. Kimbro appeals from the order and challenges the modification of custody she contends was without evidence of a material change in circumstances, the award of custody to Warren, the trial court's failure to consider Warren's history of domestic violence, suicidal tendencies, and criminal conduct before awarding custody, and the provision

in a contempt order permitting the trial court to enter an arrest warrant instanter. Following our review, we affirm.

> When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. We review de novo, however, the legal conclusions the trial court draws from the facts.

*Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019) (citations omitted). "Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case." *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). We review a custody modification order for an abuse of discretion, *Longino v. Longino*, 352 Ga. App. 263, 263-264 (834 SE2d 355) (2019), while mindful that "'the Solomonic task' of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000).

So viewed, the evidence demonstrates that the couple was divorced on July 30, 2021. Warren and Kimbro, who were not represented by counsel, agreed to joint legal and physical custody of their four minor children.[1] In August 2022, Warren filed a petition seeking an emergency ex parte custody hearing for a change of custody in which he alleged a material change in circumstances in that Kimbro's new job required her to work in New York for two days a pay period and that she was planning to permanently move with the children to New York. He also alleged that the couple's co-parenting relationship was strained because of his new romantic relationship and feared that Kimbro was a "flight risk" and would move the children away without notifying him. He further alleged that Kimbro was in contempt for violating the parenting plan in regard to the visitation schedule. Warren requested, among other things, sole physical and legal temporary and permanent custody of the children. Kimbro answered and moved to dismiss the ex-parte emergency hearing and contempt motion and counterclaimed for contempt. Kimbro denied that there had been a material change in circumstances, alleged that Warren had become violent with her during an altercation, and also expressed that a change of custody would have a

---

[1] Warren has two older children from a different relationship who reside with their mother. Kimbro has another older son from a former relationship.

detrimental impact on the children's safety, community ties, education and relationship with their mother.

Prior to the scheduled temporary hearing, Kimbro filed a motion for leave of court to relocate indicating that she had been offered a job in Portland, Oregon and requesting that the children be permitted to move with her. At the ensuing September 7, 2022 temporary hearing, Kimbro appeared pro se, but Warren was represented by counsel. Kimbro testified about the job relocation to Oregon and also about a physical altercation with Warren. According to Kimbro, she and Warren argued when Kimbro discovered their youngest child in bed with Warren's girlfriend. When she went back the next day, the argument turned physical and the police were called. Addressing the best interest of the children, Kimbro alleged that Warren was guilty of "tax evasion" because he was not paying his taxes and that if Warren were arrested the children could go into foster care because she is not in the state.

Warren testified that, regarding the couple's co-parenting cooperation, "it was going great" until recently. He described that the couple worked around each other's schedules without necessarily operating under the divorce's visitation schedule. Warren testified that the couple was able to co-parent as long as there was not "any

other woman" around. He recalled that on the day of the physical altercation Kimbro came to his house, and despite him not wanting her inside, Kimbro "force[d] herself in the house," and that when he pushed her out, she was pushed against a pole and it likely caused a bruise. The altercation further escalated, he testified, and Kimbro had "pulled out a knife" and Warren "picked up a bottle." Warren testified that although he called the police, he did not press charges because Kimbro and the children were going on spring break. Warren acknowledged that Kimbro takes the children to the doctor and dentist and "takes care of that."

Following the hearing, the trial court entered a temporary order awarding primary physical custody to Warren, ordering Kimbro to pay $1311 monthly in child support, and appointing a guardian ad litem. Kimbro retained counsel and filed a motion for reconsideration or in the alternative motion for new trial. The trial court held a hearing on the motion and subsequently denied the motion. The trial court continued primary physical custody with Warren, but the couple continued to have joint legal custody and the court granted Warren final decision-making authority.

The final hearing was held on August 14, 2023,[2] and Kimbro and Warren were represented by counsel. The couple and the guardian ad litem testified at the hearing. Warren testified that the children were doing well and about his involvement in helping one of the children obtain an Individual Education Plan ("IEP"). Warren said the child's grades were improving and that since coming into his care, "[t]hey're fine. Everybody's grades are – they're up. Everybody's passing, everybody's excelling." Warren testified that Kimbro had not paid child support for that month and that her child support obligation was currently over $13,000, and that Kimbro would not respond to his request for the children's insurance cards. Despite this, Warren said that he would permit Kimbro to see the children whenever she was in town, rather than only the scheduled visitation time. He also expressed that he was concerned that Kimbro's oldest son lived with her and in the past had tried to molest one of the couple's sons. Warren testified that Kimbro's son should be supervised whenever he is alone with the younger children. On cross-examination, Warren was asked about his previous arrests and he testified that he has been arrested twice 10 years ago for

[2] Warren filed a motion for contempt prior to the final hearing alleging that Kimbro was in arrears with her child support payment, had failed to pay certain reimbursements per the court's order, and interfered with his parenting time.

7

nonpayment of child support and that he was terminated from a job at Target because he was accused of stealing merchandise. Warren said that his scheduled work time – 8 am until 2 pm– permits him to get his children ready for school and pick them up after school. Warren accused Kimbro of not adequately watching the children, which he alleged, resulted in the abuse of their son, and also stated that the mother only wanted the children "for show." He testified that Kimbro had never been the children's primary caregiver.

Kimbro testified that her preference was to continue joint physical custody, and that she would be flexible with Warren's schedule to make sure the children have equal time with both parents. She also testified that she had never intended to move the children to New York when she was offered the job, and although she had since accepted a promotion to a job in Oregon, the move to Oregon is on hold and she only has to go to Oregon for six days each month. Kimbro testified that Warren was not cooperative when she asked for more visitation time with the children, and that on three occasions, the children's school had attempted to reach him during the day, but they could not and had called her. She also testified about the altercation with the knife and added that he had "choked [her] and a whole bunch of other stuff." Kimbro

said that she brandished the knife to protect herself. She also testified about two other occasions of Warren's alleged domestic violence. According to Kimbro, in May of 2023, Warren came to her house with the children in the car and kicked her door because she had a male visitor, and the previous year, when their youngest child was in the hospital, "he was trying to fight [her] in the hospital and the security had to remove him." She agreed that the situation has "been pretty bad since this all started." Even so, Kimbro testified that she would prefer to keep the custodial arrangement "50-50."

The guardian ad litem testified that shared custody would be "impossible" given the nature of Kimbro's new job which requires that she travel and the children need "structure and stability." She testified that in some instances shared custody can work, but not in circumstances where the parents "don't get along." The guardian ad litem noted the continued "tension and animosity" in Kimbro and Warren's relationship, and the benefit to the young children when they do not have to go "back and forth" and "have the structure and routine at [Warren's] house."

The guardian ad litem also testified that the couple's oldest child expressed that he wants to live with Warren because "he likes the routine" and "doesn't want to

9

change." The guardian ad litem characterized the abuse allegation involving Kimbro's oldest son as an "extrem[e] situation," that, although unsubstantiated, was concerning because the child is 14 years old and "there's a good possibility that the child will be going back to [Kimbro's] custody on a permanent basis." According to the guardian ad litem, Kimbro's son "should not be left with [the child he was accused of abusing] for any period of time." The guardian ad litem testified that it is "safer and better to have primary dad and give mom as much visitation as possible."[3] The trial court orally pronounced that he was not going to break up the children and would "follow the guardian ad litem's recommendation and the child will remain with ... joint legal custody, with physical custody in [Warren]."

In the new final order issued on remand from the prior appeal, the trial court found that the inability of the parents to co-parent was a material change in circumstances affecting the welfare of the children in that

---

[3] The guardian ad litem's report included that the children had been in Warren's primary custody for approximately a year and "are adjusted and thriving." She noted that there were no medical emergencies or missed appointments, all of the children's needs were being met, the three school-aged children were promoted at the end of the school year, and the children were able to participate in the activities that interested them. The guardian ad litem reported that she had investigated the allegations made by Kimbro about Warren having anger issues, a history of domestic violence and suicidal tendencies, but issued no conclusions about the allegations.

the conflict between the parties has escalated to a physical altercation involving a weapon while in the presence of the children. Further, a joint physical custody arrangement requires mutual cooperation, and flexibility which the evidence and testimony illustrates the parties are not capable of doing. To further compound the these issues, [Kimbro] must now report to work in the State of Oregon each month.

The court found that "a joint physical custody arrangement is no longer feasible nor in the best interests of the children due to the tension and animosity demonstrated by each party towards one another." The court concluded that it was in the best interest of the children for Warren to have primary physical custody of the children and to continue joint legal custody of the children in Warren and Kimbro. The court further held Kimbro and Warren in contempt for each failing to fulfill certain financial obligations per the divorce decree and child support order. Kimbro appeals from that order.

A change of custody may be granted only if a new and material change in circumstances affects the child. The trial court must find that a material change in circumstances has taken place before it can consider whether modification of custody is in the child['s] best interests. Accordingly, the trial court must make a threshold finding that there has been a material change in circumstances before it considers what is in the child['s] best interests.

(Citation and punctuation omitted; emphasis omitted.) *Burnham v. Burnham*, 350 Ga. App. 348, 352 (2) (829 SE2d 425) (2019). If the record contains any reasonable evidence to support the trial court's decision on a petition to modify custody, it will be affirmed on appeal. *Durham v. Gipson*, 261 Ga. App. 602, 605 (1) (583 SE2d 254) (2003).

1. Kimbro first contends that the trial court erroneously modified the custody of the children without any evidence of a material change of circumstances. According to Kimbro, although the trial court cited as a material change in circumstances the parties' complete breakdown in the ability to co-parent, the parent's hostile relationship does not constitute a material change of circumstances.

Evidence of the divorced parties' hostile relationship *continuing and ongoing since the divorce* is not a new or material change in circumstances. *Cousens v. Pittman*, 266 Ga. App. 387, 390 (597 SE2d 486) (2004). See *Park-Poaps v. Poaps*, 351 Ga. App. 856, 862 (2) (833 SE2d 554) (2019) ("[P]arental discord that has been ongoing since before the prior custody award does not constitute a material change in circumstances."). Here, however, rather than ongoing, the evidence at the hearing portrayed an escalating conflict between the parents that began after their divorce that

12

negatively impacted their ability to co-parent. Kimbro testified that after the divorce the co-parenting had initially worked well, and that the couple had been flexible with each others schedule and that she preferred the 50-50 shared custody. Kimbro recalled at the hearing "when we're working together, doing 50-50, all the kids stuff has been taken care of over the years. And that's why I want to keep it like that."

The trial court further found that the conflict between the parties had escalated to physical violence, the parties were not capable of the mutual cooperation and flexibility needed for a joint physical custody arrangement, and noted that the fact that Kimbo's new job required her to report to work in Oregon for several days each month only compounded the lack of stability for the children.

We are mindful of the trial court's broad discretion "[i]n making the determination whether there has been a material change in circumstances affecting the child." *Webb v. Webb*, 245 Ga. 650, 653 (3) (266 SE2d 463) (1980). Moreover, even "slight" evidence supporting the trial court's ruling will suffice. *In the Interest of R. R.*, 222 Ga. App. 301, 305 (3) (474 SE2d 12) (1996) (physical precedent only). The evidence here suffices to establish a material change in circumstances. See *Wiggins v. Rogers*, 367 Ga. App. 315, 318 (1) (885 SE2d 823) (2023) (finding that difficulty in

maintaining a shared custody arrangement and its adverse impact on the child's mood, focus, and school performance constituted a material change in circumstances).

2. Kimbro also characterizes as error the trial court's grant of custody to Warren and asserts that the trial court's decision was not in the best interest of the children. Kimbro points to the factors listed in OCGA § 19-9-3 (a) when considering the best interest of the children and maintains that the trial court did not consider any of the factors in determining the best interest of their children. Kimbro notes that there was significant testimony evincing that primary custody with Warren is not in the best interest of the children. She cites as substantiating, the evidence of his domestic violence history, job instability and inability to properly handle the health or educational needs of the children. On the other hand, she points out that the evidence established that her job and income were higher and more stable than Warren's and that she is more knowledgeable and able to deal with the children's educational, medical and other needs.

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest." *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). A trial court's decision regarding

a change in custody will be upheld on appeal unless it is shown that the court clearly abused its discretion. *Haskell v. Haskell*, 286 Ga. 112, 112 (1) (686 SE2d 102) (2009). Where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion. Id. See OCGA § 19-9-3 (a) (noting that "[i]n determining the best interests of the child, the judge may consider any relevant factor including, *but not limited to*" the statutory factors listed) (emphasis supplied).

Here, contrary to Kimbro's assertion, there was evidence about Warren's domestic violence history, employment, and parenting ability presented at the hearings and in the guardian ad litem report. Moreover, while under OCGA § 19-9-3 (a) (8) and OCGA § 9-11-52 (a) the trial court is required *if requested* to not only to recite findings of fact, but also to explain how those facts support its separate conclusions regarding the best interest of the children, Kimbro did not make such a timely request for findings of fact. See OCGA § 19-9-3 (a) (8) (provides in pertinent part: "If requested by any party on or before the close of evidence in a contested hearing, the permanent court order awarding child custody shall set forth specific findings of fact as to the basis for the judge's decision in making an award of custody including any relevant factor relied upon by the judge as set forth in paragraph (3) of

15

this subsection"); OCGA § 9-11-52 (a) (stating that "in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law"); *VanVlerah v. VanVlerah*, 359 Ga. App. 577, 579 (1) (a) (859 SE2d 546) (2021) ("OCGA § 9-11-52 (a) applies to contested family law cases."). Deferring to the trial court's factual determinations based on the evidence in the record, we find that it appropriately considered all relevant factors in its decision-making.

3. Kimbro also contends as error the trial court's failure to consider Warren's history of domestic violence, suicidal tendencies, and criminal conduct prior to awarding primary physical custody to the children. According to Kimbro, the trial court and guardian ad litem were under the erroneous legal assumption that they could not consider conduct that occurred prior to the divorce. Kimbro notes that during her testimony at the temporary custody hearing the trial court directed that, with regard to the best interest of the children, "the only thing that's relevant going forward is anything that has occurred since the entry [of the parenting plan that addressed custody and visitation]."

This, she asserts, is legal error in that OCGA § 19-9-3 (a) (3) (P) includes "evidence of family violence or sexual, mental, or physical child abuse or criminal history of either parent" as factors in determining the best interest of the child. She also argues that OCGA § 19-9-3 (a) (4) (B) requires the judge to "consider the perpetrator's history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault to another person."

Within the context of determining the threshold finding of a material change in circumstances, the trial court's statement is correct, in that it must determine whether there has been a material change in circumstances affecting the welfare of the child *since the last custody award*. To that end, circumstances existing at the time of the last custody award are not factors in determining whether there has been a material change in circumstances. See *Cousens*, 266 Ga. App. at 390. (finding no evidence that "bickering" between parents is material change in circumstances in that it has occurred continuously since the divorce).

Moreover, "[u]pon appellate review, we presume that the trial court properly considered all of the evidence before it. And as factfinder, it was the trial court's duty to reconcile seemingly conflicting evidence and to weigh the credibility of witnesses.

[Kimbro] has not shown that the trial court abused its discretion." (Citations and punctuation omitted.) *Blackmore v. Blackmore*, 311 Ga. App. 885, 890 (5) (717 SE2d 504) (2011).

4. In its consolidated order addressing, among other things, Kimbro's motion for reconsideration of the original order and the parties' cross contempt motions, the court found Kimbro and Warren in contempt for failure to pay certain monies owed per the divorce or child support order, and included that

> the Court is issuing a RULE ABSOLUTE regarding child support. In the event the Defendant is found in breach of this order, the Court can issue an arrest warrant instanter, and the Defendant may be arrested until she is brought before this Court or pays the delinquent child support arrearage.

The vacatur of an order by a Court of Appeals nullifies the legal effect of the vacated order, and subsequent judicial actions based on the vacated order. See *Kirkland v. Southern Discount Company*, 187 Ga. App. 453, 455 (3) (370 SE2d 640) (1988) ("The legal effect of the [vacatur of an order on appeal] is to nullify the judgment below and place the parties in the same position in which they were before judgment."). Thus, as the order including the rule absolute related to the order

18

vacated by this Court, rather than the new order entered after remand, the order denying Kimbro's motion for reconsideration and holding her in contempt is a nullity and had no legal effect.

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*