## S94A0222. GARDNER v. GARDNER.
(441 SE2d 666)

CARLEY, Justice.

The trial court granted appellant-plaintiff Husband a divorce and awarded appellee-defendant Wife permanent custody of the three minor children and child support. The final decree also imposed a requirement that Husband maintain, for the benefit of the children, a policy insuring his life. Husband's application for a discretionary appeal was granted to determine the validity of that provision of the final decree requiring his maintenance of the life insurance policy.

This court has previously held that, in a divorce action, there is no authority to require that a father maintain a policy insuring his life for the benefit of his minor children and that

> such provision is enforceable only when it has been agreed to by the father in the first instance. Generally, the duty of a father to support his children ceases upon his death. . . . [Cits.] The law does not require that a father provide for the support of his children after his death. [Cit.] Public policy, of course, favors the support of minor children by the father's estate after his death. [Cits.] However, the fact remains that, despite this strong public policy, a father is not required by law to create an estate for his minor children. The same is true with respect to a divorced father and a child support decree. The decree merely replaces the father's statutory duty of support. [Cit.] Absent some express, voluntary provision in the decree, the decree will not be enforced after the death of the father. [Cits.] Similarly, this court has held that a father is not required to settle an estate on his

children in a divorce case. [Cits.] The rationale is that the law places no greater duty of support on a divorced father than on one who is not divorced.

*Clavin v. Clavin*, 238 Ga. 421, 422-423 (233 SE2d 151) (1977). See also *Lane v. Titus*, 259 Ga. 264 (379 SE2d 521) (1989). Compare *Ritchea v. Ritchea*, 244 Ga. 476, 477 (2) (260 SE2d 871) (1979) (*spouse* made the beneficiary of a life insurance policy).

The rationale of *Clavin* is not inapplicable in the instant case simply because Husband may have been given the option of having a testamentary executor administer the life insurance proceeds on behalf of the children. Although the life insurance proceeds would not vest directly and permanently in the children, Husband has still been required by the trial court's order to "provide for the support of his children after his death." *Clavin v. Clavin*, supra at 423. Compare *Collins v. Collins*, 231 Ga. 683 (3) (203 SE2d 524) (1974) (inter vivos trust). Accordingly, that provision of the final decree requiring Husband's maintenance of the life insurance policy "was beyond the [trial] court's power to impose, [and] we hold it invalid." *Clavin v. Clavin*, supra at 424. To the extent that *Tomlinson v. State of Ga.*, 193 Ga. App. 123, 124 (1) (387 SE2d 49) (1989) is inconsistent with our instant holding, it is hereby overruled.

*Coker v. Coker*, 251 Ga. 542, 543 (307 SE2d 921) (1983) is not authority to the contrary. Unlike here, *Coker* involved a requirement that a life insurance policy be maintained for the benefit of the *spouse* until the obligation of child support ended. Moreover, this court did not directly uphold the validity of that provision, since *Coker* was not an appeal taken from the final decree itself. Instead, this court merely held in *Coker* that the inclusion of such a provision in the divorce decree, if a mistake of law, nevertheless did not constitute a ground for setting aside that decree pursuant to OCGA § 9-11-60 (d).

The provision of the final decree requiring Husband's maintenance of the life insurance policy

can be excised and a new trial is not required because of [it]. [Cit.] . . . Thus, the judgment will be affirmed in part and reversed in part with direction that the trial court modify its final decree to conform to this opinion. [Cit.]

*Clavin v. Clavin*, supra at 424-425. We note that Wife, the party who would be harmed by any change in the jury's allocation of resources resulting from our holding, has expressly requested that the life insurance provision be stricken and that a new trial not be granted. Compare *Stone v. Stone*, 258 Ga. 716 (373 SE2d 627) (1988); *Marshall v.*

*Marshall*, 262 Ga. 443 (421 SE2d 71) (1992).

*Judgment affirmed in part; reversed in part with direction. All the Justices concur, except Sears-Collins, Hunstein and Thompson, JJ., who dissent.*

SEARS-COLLINS, Justice, dissenting.

The majority relies on *Clavin v. Clavin*, 238 Ga. 421 (233 SE2d 151) (1977), for its holding that "in a divorce action, there is no authority to require that a father maintain a policy insuring his life for the benefit of his minor children." Majority opinion, p. 138.

In *Clavin*, this court restated the old common law principle that "the duty of a father to support his children ceases upon his death," 238 Ga. at 423, and held that no more could be required of a divorced father. I do not believe that it is inconsistent with these principles to allow a trial court in a divorce action to require a parent of a minor child (or children) to maintain a life insurance policy for the child's benefit. Furthermore, I believe that the foundation for the common law principle regarding a parent's duty ceasing at death erodes when applied to divorced parents. Therefore, I dissent.

> [T]he use of life insurance as an aspect of child support . . . does not cause the support to continue beyond the parent's death since obviously the premiums, which constitute the support, must end with the parent's death.

Clark, The Law of Domestic Relations in the United States, § 18.1 at 359 (1987). Furthermore, if an insurance requirement is limited to the period of time during which the child is a minor, and where there is no requirement that a parent build up a corpus for the child to enjoy after his or her minority, there is no violation of the statutory requirement that a parent support a child only until the child's majority, see OCGA § 19-7-2.

Moreover, to the extent that this requirement would place a duty on divorced parents which is not carried by married parents, the distinction is justified by today's alarming divorce rates and the concurrent economic impact that this phenomenon is having on our children. See Stake, Mandatory Planning for Divorce, 45 Van. L. Rev. 397, 408 (1992). Georgia's statutes are silent on the question of whether an obligation may be placed on a divorced parent which cannot be placed on a married parent,[1] and *Clavin* and its predecessors

---

[1] While the legislature has made no express pronouncement on this issue, it has endorsed different treatment for divorced and married parents in at least one respect by providing that a trial court in a divorce action may order that child support continue beyond the age of majority under certain circumstances, see OCGA § 19-6-15 (e).

appear to rely on the common law for that holding. Under the early common law, however, at least one third of "a man's goods" went automatically to his children at his death, as their "reasonable part." Blackstone's Commentaries, Book II, Ch. 32 at 492. This law was gradually "altered by imperceptible degrees," id., until at the time Blackstone wrote his commentaries the common law had evolved to the point where a man could freely devise the "whole of his chattels," id. at 493, there being "no provision to prevent the disinheriting of children by will," id. at Book I, Ch. 16, p. 449. However,

> [e]arly commentaries on the common law indicate that neither the question of support for a man's children during life nor after his death was considered so much a legal as a moral question.

(Citations omitted.) *Abrego v. Abrego*, 812 P2d 806, 811, n. 21 (Okla. 1991). Therefore, it was considered unnecessary for civil law to enforce these duties, id., as

> [p]rovidence has done it more effectually than any laws, by implanting in the breast of every parent that natural . . . insuperable degree of affection, which not even the deformity of person or mind, not even the wickedness, ingratitude, and rebellion of children, can totally suppress or extinguish.

Blackstone's Commentaries, Book I, Ch. 16, p. 447.

Sir William Blackstone obviously did not reckon with the bitterness of divorce or the amnesia often caused by a second family. We no longer live in a time when there are no prior marriages, no children from prior relationships, and no threat or even thought of divorce.[2] With the accelerating divorce rate, there are more and more children of divorced parents, and "the child of divorcing parents may need even greater financial security than the child of a stable family." Note, Child Support, Life Insurance, and the Uniform Marriage and Divorce Act, 67 Ky. L. J. 239, 250 (1978-79). Consequently, we can no longer afford to rely on that "insuperable degree of [parental] affection" to fulfill the moral duty recognized at common law of every parent who is able to support his or her child until that child comes of age.

Today at least 20 jurisdictions allow court ordered child support in the form of life insurance. See 59 ALR3d 29 (1974, Supp. 1993).[3]

---

[2] According to Blackstone, under the common law a total divorce could be had only because of "precontract," "consanguinity," "corporal imbecility," or adultery by act of parliament. Blackstone's Commentaries, Book I, Ch. 15, pp. 440-441.

[3] Some jurisdictions have relied on the Uniform Marriage and Divorce Act, which pro-

The jurisdictions which allow child support to survive the death of a parent "recognize[ ] the greater likelihood of a divorced father leaving a child without financial protection or security." *Abrego*, 812 P2d at 812. As a result, they strike a balance

> between infringing upon the parent's right to disinherit his/ her child — the strongest argument in favor of nonsurvival [of support obligations] — against the need to protect minor children of divorced parents — the strongest argument in favor of survival.

Id.

I would hold that a trial court in a divorce proceeding has the power to require a parent obligated to pay child support to obtain or maintain life insurance for the benefit of his or her minor children of the marriage, provided the insurance premium and any other support awarded do not together exceed the maximum amount of child support that would otherwise be authorized based on the evidence of need and ability to pay, and provided there is no requirement that the policy be maintained past the child's minority or that a corpus be available for the child's benefit after the child's minority.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED APRIL 4, 1994 —
RECONSIDERATION DENIED APRIL 28, 1994.

*Custer & Hill, Lawrence B. Custer, Douglas A. Hill,* for appellant.

*Stern & Edlin, George S. Stern, Janis Y. Dickman,* for appellee.

vides that
"[u]nless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child *but not by the death of a parent obligated to support the child.* When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment, to the extent just and appropriate in the circumstances. (Emphasis added.)"
*Graham v. Graham,* 595 SW2d 720, 723 (Ky. App. 1980).