A95A1989. IN THE INTEREST OF R. E. W., a child.
(471 SE2d 6)

POPE, Presiding Judge.

Appellant-father and appellee-mother were divorced in November 1988. Pursuant to the agreement of the parties, custody of their three-year-old daughter was awarded to the mother and the father was allowed only supervised visitation in his mother's home. In November 1993, five years after the parties' divorce, the father filed the present complaint seeking to expand his visitation privileges to include, inter alia, unsupervised visitation. The superior court referred the matter to the juvenile court pursuant to OCGA § 15-11-5 (c). Following a hearing, the juvenile court entered an order extending the weekend visitation period, but refused to allow unsupervised visitation or specific periods of holiday and summer visitation. We granted the father's application for discretionary appeal, and the father timely filed his notice of appeal to this Court. We now reverse the order of the juvenile court.

is free to reflect that in the award." 427 NW2d at 735.

The record shows that for the four years preceding the hearing the father has been engaged in a monogamous homosexual relationship, and that he and his partner own a three bedroom, two bath home in Yorktown, Virginia, where the father is the manager of a funeral home. The father testified that he does not believe that his daughter's best interests would be served by informing her of the sexual nature of his relationship with his partner, and that he would actively conceal the sexual aspects of their relationship and the fact of his homosexuality from her. The father also testified that he and his partner each have their own bedroom, and that few people know they have a sexual relationship.

The father also testified about his love for his daughter and his belief that their relationship would be fostered by unsupervised visitation which would allow them to participate in activities outside his mother's home, such as going to amusement parks and taking trips together. The father also testified that he attends church in Virginia, and that he and his daughter would attend church together when she visited. The evidence shows that the father sends his daughter cards and presents for occasions (and sometimes for no reason) and that he tries to visit his daughter on her birthday and at Christmas. The father testified that although he usually does not spend Easter with his daughter, he has always mailed to her a hand-made Easter basket.

The father's mother testified that she has visited her son in his home on several occasions, and that she had never observed anything that would indicate that he and his partner have a sexual relationship. The mother testified that she did not learn of her son's homosexuality until the initiation of the present proceedings, and that even though she now knows the nature of her son's relationship with his partner, she has never observed any displays of affection between them or anything to indicate they are more than just friends.

Visitation rights of non-custodial parents are subject to review and modification upon the motion of either parent every two years without the necessity of showing a material change in circumstances. OCGA §§ 19-9-1 (b) and 19-9-3 (b). The standard to be applied in deciding visitation rights is the best interests of the child. Further, it is the express policy of this state to encourage contact between a child and the non-custodial divorced parent. OCGA § 19-9-3 (d). "Although the trial court is vested with discretion in these matters which will not be disturbed absent abuse, we can affirm the trial court only if there is reasonable evidence to support the decision." *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 403 (3) (436 SE2d 700) (1993).

The juvenile court premised its denial of the father's request for unsupervised visitation on the finding that the father was engaged in an "immoral" homosexual relationship, and that the father could not be "trusted to . . . see that his relationship does not occur in such a

manner as to come to the attention of the child." The juvenile court found the father to be untrustworthy because, prior to the divorce, he had been discovered by the mother with another man in the marital bedroom. The court also found that the father had "followed" his present partner to Virginia, and that the father was concerned primarily with his own wishes and desires.

We agree with the father that the juvenile court erred in concluding that the pre-divorce incident cited above shows that the father cannot presently be trusted to keep his word that, while in his care, his daughter will not be exposed to sexual conduct of any nature regardless of the gender of the participants. See *Mink v. Mink*, 195 Ga. App. 760 (395 SE2d 237) (1990) (physical precedent only). Moreover, our review of the record discloses no competent evidence to cast doubt on the father's testimony that he believes it in his daughter's best interests to conceal the sexual nature of his relationship with his partner, and that he intends to act accordingly. Accord *In re Marriage of Walsh*, 451 NW2d 492, 493 (Iowa 1990). The juvenile court thus erred in reaching the opposite conclusion.

As the father points out, the juvenile court also went to great lengths to define the father's lifestyle as immoral and illegal, and noted that it had "regularly disallowed contact of people who are living in immoral relationships whether it was heterosexual or homosexual." We agree with the juvenile court that in some instances a parent's "immoral conduct" might warrant limitations on the contact between parent and child; but only if it is shown that the child is exposed to the parent's undesirable conduct in such a way that it has or would likely adversely affect the child. See *Hayes v. Hayes*, 199 Ga. App. 132 (404 SE2d 276) (1991) (in which the court noted that both parents were engaged in meretricious relationships, but that there was no evidence that either party committed sexual acts in the child's presence). In this regard, we agree with those courts from other jurisdictions that have held that the primary consideration in determining custody and visitation issues is not the sexual mores or behavior of the parent, but whether the child will somehow be harmed by the conduct of the parent. "Visitation rights must be determined with reference to the needs of the child rather than the sexual preferences of the parent. The best interests of the child remain paramount." *In the Matter of Marriage of Cabalquinto*, 669 P2d 886, 888 (Wash. 1983). See also *Birdsall v. Birdsall*, 243 Cal. Rptr. 287, 290 (Cal. App. 1988) (affirmative showing of harm or likely harm to the child is necessary in order to restrict parental visitation); *In the Matter of Marriage of Ashling*, 599 P2d 475, 476 (Or. Ct. App. 1979) (restrictions not warranted as long as lesbian mother's sexual practices remain discreet, "a requirement whatever the sexual preferences of the parties might be"); *Brinkley v. Brinkley*, 336 SE2d 901, 902 (Va. Ct. App.

1985) (extent to which child is exposed to an "illicit" relationship must be given careful consideration). "Too long have courts labored under the notion that divorced parents must somehow be perfect in every respect. The law should recognize that parents, married or not, are individual human beings each with his or her own particular virtues and vices. . . . In domestic relations cases the courts should recognize that all parents have faults, and look not to the faults of the parents, but to the needs of the child." *Conkel v. Conkel*, 509 NE2d 983, 985-986 (Ohio Ct. App. 1987).

Based on the evidence of record in this case, we find absolutely no basis for the juvenile court's conclusion that continued restricted visitation is in the best interests of the child. Indeed we agree with the father that continued restricted visitation will probably raise more questions than the alternative in the mind of this very bright child who will undoubtedly begin to question the restricted nature of her relationship with her father. Accordingly, the juvenile court is directed on remand to award the father customary unsupervised weekend, holiday and summer visitation, with whatever reasonable restrictions are necessary to ensure the best interests of the child. Specifically, the juvenile court is authorized to consider the possible detrimental effect on the child of frequent out-of-state travel, including the possibility of interference with school and other activities, and fashion the visitation accordingly. See *Katz v. Katz*, 264 Ga. 440 (445 SE2d 531) (1994).

*Judgment reversed and case remanded with direction. Beasley, C. J., and Ruffin, J., concur.*

DECIDED MARCH 7, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996 —

*Raymond & Dalton, Philip T. Raymond III, Susan L. Dalton,* for appellant.
*Raymond M. Kelley, Jr.,* for appellee.