## A01A1827. BURNS v. BURNS.
(560 SE2d 47)

MILLER, Judge.

The sole issue in this case is whether the trial court erred in enforcing a consent decree pursuant to a divorce between the parties in which they agreed that no child visitations would occur during any time the party being visited cohabited with or had overnight stays with any adult to whom that party was not legally married or related within the second degree. As we discern no error in enforcing this legally constituted consent order, we affirm.

Darian and Susan Burns were divorced on December 4, 1995, and Darian retained full custody of the couple's three minor children. Three years later Susan filed a motion for contempt, alleging that Darian refused to allow her visitation with the children. As a result the court issued a consent order modifying visitation rights. The modification required and the parties agreed that "[t]here shall be no visitation nor residence by the children with either party during any time where such party cohabits with or has overnight stays with any adult to which such party is not legally married or to whom party is not related within the second degree."

On July 1, 2000, the State of Vermont enacted a civil union law,[1] and on July 3, 2000, Susan Burns and a female companion (not related to Susan) traveled to Vermont where they received a "LICENSE AND CERTIFICATE OF CIVIL UNION." Two months later Darian filed a motion for contempt, alleging that Susan violated the trial court's order by exercising visitation with the children

---

[8] 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994).
[1] 15 Vt. Stat. Ann. § 1201 et seq.

"while cohabitating with her female lover." Susan opposed the motion for contempt, arguing that she was not in violation of the visitation requirements in that she had complied with the legally married requirement by virtue of her civil union with an adult female. No party argued that the consent decree was unenforceable.[2]

The trial court found that the provisions of its order applied equally to both parties and to both sexes and that a "civil union" is not a marriage. The court further found that the provisions of the order were valid and enforceable.

On appeal Susan contends that she and her female companion were married in the State of Vermont and pursuant to "the full faith and credit doctrine they are married in Georgia as well." She argues further that she has a fundamental right to privacy which includes the right to define her own family and that the State of Georgia cannot place limitations on this right.

Susan's position, however, has a flawed premise: she and her female companion were not married in Vermont but instead entered into a "civil union" under 15 Vt. Stat. Ann. § 1201 et seq. The definitional section of that statute expressly distinguishes between "marriage," which is defined as "the legally recognized union of one man and one woman,"[3] and "civil union," which is defined as a relationship established between two eligible persons pursuant to that chapter.[4] The next section reemphasizes this distinction, requiring that eligible persons must "[b]e of the same sex and therefore excluded from the marriage laws of this state."[5] Indeed, the legislative findings accompanying the enactment of the Vermont civil union statute noted that "a system of civil unions does not bestow the status of civil marriage. . . ."[6]

Moreover, even if Vermont had purported to legalize same-sex marriages, such would not be recognized in Georgia, the place where the consent decree was ordered and agreed to by both parties (both of whom are Georgia residents), and more importantly the place where the present action is brought. OCGA § 19-3-3.1 (a) clearly states that it is the public policy of Georgia "to recognize the union only of man and woman. Marriages between persons of the same sex are prohibited in this state." Additionally, under OCGA § 19-3-3.1 (b)

[n]o marriage between persons of the same sex shall be recognized as entitled to the benefits of marriage. Any mar-

---

[2] See OCGA § 13-8-2.
[3] 15 Vt. Stat. Ann. § 1201 (4).
[4] 15 Vt. Stat. Ann. § 1201 (2).
[5] 15 Vt. Stat. Ann. § 1202 (2).
[6] 2000 Vt. Act 91, § 1 (10).

riage entered into by persons of the same sex pursuant to a marriage license issued by another state or foreign jurisdiction or otherwise shall be void in this state. Any contractual rights granted by virtue of such license shall be unenforceable in the courts of this state and the courts of this state shall have no jurisdiction whatsoever under any circumstances to grant a divorce or separate maintenance with respect to such marriage or otherwise to consider or rule on any of the parties' respective rights arising as a result of or in connection with such marriage.

Moreover, Georgia is not required to give full faith and credit to same-sex marriages of other states.[7]

What constitutes a marriage in the State of Georgia is a legislative function, not a judicial one, and as judges we are duty bound to follow the clear language of the statute. The Georgia Legislature has chosen not to recognize marriage between persons of the same sex, and any constitutional challenge to Georgia's marriage statute should be addressed to the Supreme Court of Georgia.

It is important to note that Susan's argument that her right to privacy has been infringed upon ignores her role in creating the consent decree. Although she is correct that there is a right to privacy of intimacy between persons legally able to consent,[8] she waived that right (to the extent that right is interfered with here) when she agreed to the consent decree. That this right may be waived is clear.[9] Indeed, if Susan wanted to ensure that her civil union would be recognized in the same manner as a marriage, she should have included language to that effect in the consent decree itself.

Simply put, the consent order signed by the presiding judge provides that visitation will not be allowed during the time that Darian or Susan cohabitates with an adult to whom he or she is not legally married, and as Susan and her companion are not legally married in the State of Vermont and clearly not legally married under Georgia law, any such activity by Susan is in violation of the court's order. Accordingly, the court did not err in its conclusion that the visitation order is valid and that such violation constitutes contempt.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

---

[7] See 28 USCS § 1738C.

[8] *Powell v. State*, 270 Ga. 327, 336 (3) (510 SE2d 18) (1998).

[9] Id. at 331 (3); see *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 199 (50 SE 68) (1905).

DECIDED JANUARY 23, 2002 —
RECONSIDERATION DENIED FEBRUARY 7, 2002 —

*Adrian F. Lanser III*, for appellant.
*Douglas D. Slade, Sr.*, for appellee.
*McGarity & Lloyd, Terry L. Lloyd, Gerald R. Weber, Jr., Robert L. Tsai, Stephen R. Scarborough, Robert D. McCullers, Garnett Harrison*, amici curiae.