## S09F0132. MONGERSON v. MONGERSON.
### (678 SE2d 891)

BENHAM, Justice.

Appellant Eric Duane Mongerson and appellee Sandy Kay Ehlers Mongerson were married in March 1986 and were divorced by a judgment and decree filed October 1, 2007. This Court granted appellant Husband's application for discretionary review pursuant to the Family Law Pilot Project.[1]

The final judgment, which incorporated the parties' settlement agreement, gave appellee Wife custody of the couple's three minor children, gave Husband limited visitation with his children until greater periods of visitation were deemed appropriate by the children's therapist, and required Husband to pay monthly child support, to maintain a life insurance policy on which the couple's four children were named as beneficiaries, to pay 90 percent of the minor

---

[1] Pursuant to the Family Law Pilot Project, this Court grants all non-frivolous applications seeking review of a judgment and decree of divorce. *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

children's uninsured health expenses, and to pay Wife monthly alimony for as long as she was enrolled at an educational facility and earning passing grades in a program to obtain a college degree. Husband was ordered to pay attorney fees of $8,800 to Wife's attorney, with the option of paying $200 a month and with the award accruing interest at an annual rate of 11.25 percent. The children were to have no contact with their paternal grandparents, and Husband was "prohibited from exposing the children to his homosexual partners and friends."

1. The trial court's order requires Husband to maintain a life insurance policy on his life with the four children of the marriage named as equal beneficiaries.[2] A life insurance policy is often used as a means of providing child support. See OCGA § 19-6-34. A parent can use a life insurance policy to voluntarily provide more child support than is statutorily required (see *McClain v. McClain*, 235 Ga. 659 (221 SE2d 561) (1975)), but an intention to support a child into his majority is found only where there is specific and unambiguous language to that effect. *Anderson v. Anderson*, 251 Ga. 508, 509 (307 SE2d 483) (1983). The couple's eldest child had reached the age of majority when the October 2007 divorce judgment was entered, and there is no evidence of specific and unambiguous language that reflects a voluntary obligation on the part of Husband to assume a support obligation that exceeded his legal duty. Accordingly, it was error to require Husband to name a child who had reached majority as beneficiary of a policy of life insurance on Husband's life.

2. Husband complains the trial court abused its discretion when it ordered that the children not be exposed to their paternal grandparents and prohibited Husband "from exposing the children to his homosexual partners and friends." While this State has a policy to "encourage parents to share in the rights and responsibilities of raising their child[ren] after such parents have separated or dissolved their marriage" (OCGA § 19-9-3 (d)), a trial court has discretion to prohibit the exercise of visitation rights by a non-custodial parent in the presence of certain people if the evidence demonstrates the children have been exposed to inappropriate conduct involving the specified persons or that exposure to the prohibited persons would adversely affect the children. *Brandenburg v. Brandenburg*, 274 Ga. 183 (1) (551 SE2d 721) (2001); *Moses v.*

---

[2] While the parties' settlement agreement did not include this provision, Husband agreed when he testified at the divorce hearing to maintain the life insurance policy for the benefit of his children. Thus, we do not see this as a case in which the trial court imposed over the parent's objection the requirement that the parent maintain a life insurance policy for the benefit of minor children. Compare *Gardner v. Gardner*, 264 Ga. 138 (441 SE2d 666) (1994); *Clavin v. Clavin*, 238 Ga. 421, 422 (233 SE2d 151) (1977).

*King*, 281 Ga. App. 687, 691 (637 SE2d 97) (2006). "In the absence of evidence that exposure to a third party will have an adverse effect on the best interests of the children, a trial court abuses its discretion by prohibiting a parent from exercising his or her custodial rights in that person's presence." (Citation omitted.) *Arnold v. Arnold*, 275 Ga. 354 (566 SE2d 679) (2002).

Contrary to Husband's assertion, the record contains evidence that supports the trial court's decision that exposure to the paternal grandparents will have an adverse effect on the best interests of the children. There was evidence the grandparents had been physically and emotionally abusive of the children, and Husband acknowledged he had not fulfilled his promise to never leave his children alone with his parents. Accordingly, the trial court did not err when it restricted contact between the children and their paternal grandparents.

The blanket prohibition against exposure of the children to members of the gay and lesbian community who are acquainted with Husband is another matter. There is no evidence in the record before us that any member of the excluded community has engaged in inappropriate conduct in the presence of the children or that the children would be adversely affected by exposure to any member of that community. The prohibition against contact with any gay or lesbian person acquainted with Husband assumes, without evidentiary support, that the children will suffer harm from any such contact. Such an arbitrary classification based on sexual orientation flies in the face of our public policy that encourages divorced parents to participate in the raising of their children (OCGA § 19-9-3 (d)), and constitutes an abuse of discretion. See *Turman v. Boleman*, 235 Ga. App. 243, 244 (510 SE2d 532) (1998) (abuse of discretion to refuse to permit mother to exercise visitation rights with child in the presence of any African-American male); *In the Interest of R. E. W.*, 220 Ga. App. 861 (471 SE2d 6) (1996) (abuse of discretion to refuse father unsupervised visitation with child based on father's purported "immoral conduct" without evidence the child was or would be exposed to undesirable conduct and had or would be adversely affected thereby). In the absence of evidence that exposure to any member of the gay and lesbian community acquainted with Husband will have an adverse effect on the best interests of the children, the trial court abused its discretion when it imposed such a restriction on Husband's visitation rights. *Arnold v. Arnold*, supra, 275 Ga. 354. Accordingly, we vacate the blanket prohibition against exposure of the children to Husband's gay and lesbian acquaintances.

3. The trial court's order requires Husband to pay 90 percent of any uninsured health care expense of the minor children and contains a non-exhaustive list of various health care expenses covered by the provision, including "psychiatric/psychological." Citing

*Wimpey v. Pope*, 246 Ga. 545 (272 SE2d 278) (1980) ("medical expenses," as used in divorce decree, did not cover bills for children's psychological care), Husband contends he should not be held responsible for payment of bills for the children's psychological counseling. *Wimpey* stands only for the proposition that psychological care is not included within the phrase "medical care," when that phrase is used in a judgment of divorce and is not defined therein. Id. at 546. In the case at bar, the phrase at issue is "health care expenses" and that term is defined in the judgment as including psychological care. Inasmuch as Husband is responsible for 90 percent of "uncovered health care expenses," including psychological care, Husband's contention is without merit.

4. Husband's assertion that the trial court failed to make a finding of Wife's gross income is without merit. The trial court's order contains a finding of each party's gross monthly earnings, and the transcript of the final hearing contains evidence supporting said finding. See *Dyals v. Dyals*, 281 Ga. 894 (1) (644 SE2d 138) (2007) (factfinder's determination of gross income not disturbed when supported by evidence of record).

5. Husband takes issue with three provisions of the final judgment on the ground that the trial court's oral ruling at the close of the hearing did not include such measures. A trial court's oral pronouncement is not a judgment until it is reduced to writing and entered as a judgment. *Williams v. City of LaGrange*, 213 Ga. 241 (1) (98 SE2d 617) (1957). The trial court's oral pronouncements are not binding because, while they may provide insight on the intent of the subsequent written judgment, any discrepancy between the written judgment and oral pronouncements is resolved in favor of the written judgment. *Blair v. Bishop*, 290 Ga. App. 721 (2) (660 SE2d 35) (2008).

With regard to the final judgment's provision giving Wife a "right of first refusal" that requires Husband to notify Wife when he plans to leave the children in the care of a third party in order that Wife can decide whether she shall provide care for the children in that instance, Husband additionally complains that the parties did not agree to such a provision. However, the judgment issued by a trial court in a divorce action is not limited to only those matters upon which the parties have agreed.

6. Husband complains that the award of alimony to Wife constitutes an abuse of discretion, contending the trial court made no finding concerning Husband's ability to pay and Wife's needs, and contending the award is grossly excessive because it is possible under the terms of the award for Wife to remain a student and receive alimony for the rest of her life.

The factfinder is given wide latitude in fixing the amount of

alimony, and may use personal experience as an enlightened person in judging the amount necessary for support under the evidence as disclosed by the record and all the facts and circumstances of the case. *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005). The record reflects that the trial court considered that Wife has a monthly income approximately one-tenth that of Husband and that Wife has spent the majority of her time during the 21-year marriage as a full-time homemaker and child caregiver and requires additional education to obtain gainful employment. The trial court did not abuse its discretion in making its alimony award. *Arkwright v. Arkwright*, 284 Ga. 545 (2) (a) (668 SE2d 709) (2008).

Husband's concern that the alimony award as entered gives Wife an opportunity to abuse the alimony award in the future is speculative and can be addressed in a petition for modification should Husband's fears be realized at some point in the future.

7. Husband finds fault with the assessment of attorney fees against him, arguing the trial court did not make factual findings necessary to support an award of attorney fees based on OCGA § 19-6-2 (a), the trial court did not afford Husband an evidentiary hearing to challenge the value and need of the legal services performed by Wife's attorney, and the trial court abused its discretion by including a provision authorizing the accrual of interest on the award at 11.25 percent until paid in full.

The final judgment and decree of divorce did not cite a statutory basis for the attorney fee award, but that omission does not mean that the statutory basis of the award is in question. *Mixon v. Mixon*, 278 Ga. 446 (2) (603 SE2d 287) (2004). OCGA § 19-6-2 authorizes the trial court in a divorce action to exercise its sound discretion and award attorney fees after considering the financial circumstances of both parties. The award is " 'to ensure effective representation of both spouses so that all issues can be fully and fairly resolved.' [Cit.]" Id. Wife's request for attorney fees in her complaint sought the award for her representation during the divorce litigation, evidence of the parties' disparate financial conditions was presented at the final hearing before the trial court, no motion for an award of attorney fees pursuant to OCGA § 9-15-14 was made, there is no indication in the record that the trial court sua sponte undertook a consideration of an award of attorney fees on that basis, and Husband does not contend the award was made pursuant to any statutory provision other than OCGA § 19-6-2. Id.; *Gomes v. Gomes*, 278 Ga. 568, 569 (604 SE2d 486) (2004). We conclude the award was made pursuant to OCGA § 19-6-2.

Whether to award attorney fees in a divorce action pursuant to OCGA § 19-6-2 is a matter within the discretion of the trial court, and the exercise of that discretion will not be reversed unless

manifestly or flagrantly abused. *Dasher v. Dasher*, 283 Ga. 436 (2) (658 SE2d 571) (2008). The trial court is required by OCGA § 19-6-2 (a) to consider the financial circumstances of the parties when considering an award of attorney fees, and the transcript of the final hearing establishes the trial court properly considered the relative financial positions of the parties. See *Patel v. Patel*, 285 Ga. 391, 393 (4) (677 SE2d 114) (2009); *Wood v. Wood*, 283 Ga. 8 (6) (655 SE2d 611) (2008); *Rieffel v. Rieffel*, 281 Ga. 891, 893 (644 SE2d 140) (2007).

Husband's complaint that he was not afforded a hearing on the issue of attorney fees is without merit. The trial court began the final hearing by stating that the issues remaining for resolution at the hearing were alimony and attorney fees, and reminded the parties that testimony "is regarding alimony and attorney fees only." During the hearing, Husband's counsel argued that no award of attorney fees should be made due to Husband's financial condition. After the evidence was presented, the trial court orally announced a ruling on the issue of attorney fees and Husband voiced no objection.

Husband's concern about the interest rate imposed on the award of attorney fees is justified. OCGA § 7-4-12 (a) states that "[a]ll judgments in this state shall bear annual interest upon the principal amount recovered at a rate equal to the prime rate . . . on the day the judgment is entered plus 3 percent." Husband asserts the date of the judgment was October 1, 2007, and the applicable prime rate was 7.75 percent. Wife contends the applicable prime rate is 8.25 percent, the rate on July 20, 2007, the day the trial court orally pronounced its judgment. However, as we stated earlier, an oral pronouncement is not a judgment; it must be reduced to writing and entered as a judgment to be effective. See Division 5, supra. The portion of the attorney fee award which set the rate of interest is vacated and the case is remanded to the trial court to determine the rate of interest the judgment is to carry pursuant to OCGA § 7-4-12 (a).

8. In its order, the trial court awarded child custody and visitation according to the terms of the parties' stipulated agreement. The trial court's order went on to express its opinion that, but for the agreement, the trial court would not have permitted Husband the limited contact to which the parties agreed. The trial court's order advised the parties that it would "entertain a request to review and modify the current visitation schedule at any time, at the request of either party," and would consider specified facts established at the hearing when faced with a request to review and modify visitation.

We read the language at issue as an attempt by the trial court to retain jurisdiction of the case and, as such, it is wholly ineffective. *Anthony v. Anthony*, 212 Ga. 356, 358 (92 SE2d 857) (1956). Accord-

ingly, the case is remanded to the trial court for removal of that language from the judgment.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur, except Carley and Melton, JJ., who concur specially.*

MELTON, Justice, concurring specially.

While I concur with the overall result of the majority opinion, I write separately to emphasize that Division 2 of the majority opinion should only be read to stand for the well-settled proposition that, absent *evidence* of harm to the best interests of the children through their exposure to certain individuals, a trial court abuses its discretion by prohibiting a parent from exercising their visitation rights while in the presence of such individuals (in this instance, Husband's homosexual partners and friends). See *Brandenburg v. Brandenburg*, 274 Ga. 183 (1) (551 SE2d 721) (2001); *Arnold v. Arnold*, 275 Ga. 354 (566 SE2d 679) (2002). While Husband's behaviors or actions affecting his children's well being could support the trial court's imposition of any number of restrictions on Husband's visitation rights, the trial court abused its discretion by restricting Husband's visitation rights based on his children's potential exposure to Husband's compatriots, independent of whether or not Husband's friends exhibited any harmful behavior that could affect the children. Our case law is clear that such a visitation restriction must fail.

I am authorized to state that Justice Carley joins in this special concurrence.

DECIDED JUNE 15, 2009.

*Hedgepeth & Heredia, Hannibal F. Heredia, Kimberli J. Reagin*, for appellant.

*Lance P. McMillian*, for appellee.

*Elizabeth L. Littrell*, amicus curiae.