**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 7, 2014**

# In the Court of Appeals of Georgia

A14A0922. NORMAN v. NORMAN.

DILLARD, Judge.

Darby Norman ("Darby") appeals the trial court's order finding her in contempt of a settlement agreement that she entered into with her ex-husband, Toby Norman ("Toby"), as part of the parties' divorce decree, and denying her motion to strike the overnight-guest provision in that agreement. She contends on appeal that the trial court erred by (1) enforcing the overnight-guest provision when it violates public policy, and (2) misinterpreting binding precedent. For the reasons set forth *infra*, we affirm.

The record reflects that the Normans divorced in February 2013, and that a settlement agreement entered into by the parties in January 2013 was thereafter incorporated into their final judgment and decree of divorce. The settlement

agreement awarded the parties' joint legal custody and Darby primary physical custody of the Normans' two minor daughters, and included, in relevant part, the following provision:

> When the minor children of the parties hereto are in either of the party's physical custody, neither party shall allow a non-relative adult person of the opposite gender to remain overnight in the same house, apartment, or other place being occupied by that party and the minor children, provided, however, this restriction shall not apply to an overnight guest of the minor children.

On March 28, 2013 (only one month after entry of the divorce decree), Toby filed a complaint for contempt against his ex-wife, alleging that Darby had repeatedly violated this provision by allowing her boyfriend to stay in her home overnight while she was in physical custody of the children. In response, Darby filed a motion to strike the provision from the decree, arguing that the provision was "overly broad, overly burdensome, and unenforceable under the circumstances."

Following a hearing at which neither party testified, but after which the trial court considered deposition testimony filed by the parties, the trial court determined that Darby had admitted to violating the overnight-guest provision and that the violation of this provision by either party "would be harmful to the minor children's

emotional well-being." In reaching its conclusion, the trial court noted that Darby understood and agreed to inclusion of the provision in the settlement agreement with the advice of counsel, and that at least one of the parties' daughters was aware of the provision and that her mother was in violation of it by engaging in prohibited behavior, which the trial court determined was knowledge "detrimental to the children's emotional well-being."[1] Accordingly, the trial court denied Darby's motion to strike the provision, determining that the provision was "narrowly-drawn, rationally related to the harm it seeks to protect, and in the best interests of the children in this case." Further, the trial court granted Toby's motion for contempt. This appeal by Darby follows.

---

[1] Toby's deposition testimony revealed that the children voluntarily share information with him and that they "know [Darby's behavior is] wrong . . . because the way we have raised them up to this point." Toby further testified that the children had asked why he and Darby were still "fussing," and that he had explained to the eldest daughter, then nine years old, that her mother was "not supposed to have overnight company." Then, when Darby's attorney pressed Toby as to whether he had told the eldest daughter that his ex-wife was "an adulteress," he responded that the child discovered that her mother was having an affair with her boyfriend before the divorce while "playing on [Darby's] phone and [seeing] a bunch of texts coming from [her boyfriend], inappropriate texts."

Darby contends that the trial court erred in enforcing the overnight-guest provision because it violates public policy and because the court misinterpreted binding precedent. We disagree.

Although Darby is correct that it is the express public policy in Georgia to "encourage that a child has continuing contact with parents . . . who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated or dissolved their marriage or relationship,"[2] *and* that contracts "against the policy of the law cannot be enforced,"[3] the overnight-guest provision in the parties' settlement agreement and divorce decree is *not* violative of these public policies.

The overnight-guest provision quoted *supra* is neither overly broad nor unduly burdensome. Indeed, this provision applies to both parties and prohibits *unrelated* overnight adult guests of the opposite gender—a restriction that neither singles out one particular individual for a blanket prohibition nor includes relatives. As such, it is distinguishable from provisions imposed by trial courts that this Court and our Supreme Court have deemed overly broad and/or unduly burdensome, and thus

[2] OCGA § 19-9-3 (d).

[3] OCGA § 13-8-2 (a).

4

unenforceable, in the absence of a showing of harm.[4] Additionally, the provision does

not make an arbitrary distinction based upon race, sexual preference, or any other

such classification.[5] The provision is also narrowly tailored to only prohibit the

[4] *See Ward v. Ward*, 289 Ga. 250, 250-51 (1) (710 SE2d 555) (2011) (holding that trial court abused its discretion in amending visitation provision in final decree to provide that mother "shall not have any overnight male guests while the minor children are present" because the provision would prohibit the mother "from having visitors with whom she has no romantic relationship"); *Arnold v. Arnold*, 275 Ga. 354, 354 (566 SE2d 679) (2002) (holding that trial court abused its discretion in prohibiting children "from any contact with a certain named friend of Wife" when there was "no evidence that the relationship between Wife and her friend was or will be harmful to the children, or that they ever engaged in any inappropriate conduct in the presence of the children"); *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001) (holding that trial court abused its discretion in prohibiting father from exercising visitation with children in the presence of his girlfriend, even if the two should marry, when there was no "evidence that such relationship had or likely would have a deleterious effect on the children beyond that normally associated with divorce or a parent's remarriage"); *Katz v. Katz*, 264 Ga. 440, 440 (445 SE2d 531) (1994) (holding that trial court abused its discretion "regarding the provisions of the final judgment pertaining to visitation in the event the mother moves"). *But see Mongerson v. Mongerson*, 285 Ga. 554, 556 (2) (678 SE2d 891) (2009) (holding that trial court's decision to prohibit children's exposure to paternal grandparents was not an abuse of discretion when evidence showed that grandparents "had been physically and emotionally abusive of the children"), *overruled on other grounds by Simmons v. Simmons*, 288 Ga. 670 (706 SE2d 456) (2011).

[5] *See Mongerson*, 285 Ga. at 555-56 (2) (holding that trial court erred in prohibiting husband "from exposing the children to his homosexual partners and their friends," which was "an arbitrary classification based on sexual orientation"); *Turman v. Boleman*, 235 Ga. App. 243, 243-44 (510 SE2d 532) (1998) (finding unenforceable a settlement-agreement provision that prohibited mother's exercise of visitation rights "in the presence of [a specific individual] or any other African-American male"

overnight stay of an unrelated adult member of the opposite gender in either party's home, as opposed to a provision that applies at all times.[6] And despite Darby's argument that the provision is "arbitrary" because (1) the restriction does not prohibit an unrelated adult member of the opposite gender from remaining in her home after the children have fallen asleep and returning before they wake up, and (2) the provision contains an exception for vacations,[7] these aspects of the parties' settlement

---

because the provision "sanctioned arbitrary racial classification in determining visitation rights in violation of the Equal Protection Clause"); *id.* at 244 ("Although a court may validly provide, under appropriate circumstances, that a child is to have no contact with particular individuals who are deemed harmful to the child, such provision cannot be based solely upon racial considerations, as such ruling violates the public policy of the State of Georgia."); *In the Interest of R. E. W.*, 220 Ga. App. 861, 862-63 (471 SE2d 6) (1996) (holding that trial court erred in denying father's request for unsupervised visitation when denial was premised upon "the finding that the father was engaged in an 'immoral' homosexual relationship, and that the father could not be 'trusted to . . . see that his relationship does not occur in such a manner as to come to the attention of the child'").

[6] *Cf. Arnold*, 275 Ga. at 354 (unenforceable provision "prohibited children from any contact with a certain named friend of Wife and imposed on her the responsibility of being sure that there was no such exposure"); *Brandenburg*, 274 Ga. at 184 (1) (unenforceable provision "precluded [father] from exercising . . . visitation rights in the presence of [girlfriend], even if they marr[ied]").

[7] This exception provides as follows:

[I]f either party goes on an out of town vacation trip with the children, a non-relative adult person of the opposite gender shall be allowed to

agreement instead demonstrate exactly why the overnight-guest provision simply *cannot* be viewed as overly broad or unduly burdensome.[8]

Finally, Darby contends that the trial court erred in enforcing the overnight-guest provision when there was no showing of harm justifying such a restriction. This argument is a nonstarter. Indeed, even without the trial court's explicit finding that

> accompany such party and the children on such out of town vacation trip provided that such non-relative adult person of the opposite gender does not stay in the same bedroom with the party who has taken the children on such out of town vacation trip.

According to Toby's deposition testimony, the parties "argued about [the exception] several days before the decree to try to get that in the decree, and [he] finally agreed to [it]." As such, the fact that Darby now argues that the inclusion of this exception renders the overnight-guest provision arbitrary appears disingenuous at best. Further, we are wholly unconvinced that a prohibition against overnight stays by "non-relative members of the opposite sex" can be read as prohibiting the presence of cousins, uncles, nephews, or relatives by marriage. *Cf. Ward*, 289 Ga. at 250-51 (1) (agreeing with appellant that prohibition against "overnight male guests" would prohibit mother from "having visitors with whom she has no romantic relationship," including her father, a brother, a new spouse, or the children's father).

[8] *Cf. Katz*, 264 Ga. at 440 (holding that trial court abused discretion by placing unduly burdensome responsibilities upon mother should she decide to move away when it imposed upon her the obligation to travel with the children (even when they became old enough to travel alone) and to bear the cost of transportation to meet father's visitation schedule of every first and third Thursday evening to Sunday evening).

*these children* would be harmed if the provision went unenforced,[9] the fact remains that this provision was entered into *by consent of the parties prior to the trial court's entry of its final order* incorporating the settlement agreement. Given this posture, the imposition of this provision is procedurally inapposite to cases in which the *trial court* modifies an existing agreement or imposes such a provision on parties *sua sponte*.[10] And historically the law has recognized that "natural bonds of affection lead

---

[9] We note that the trial court's finding in this regard would be reviewed for an abuse of discretion. *See Mongerson*, 285 Ga. at 556 (2) (holding that trial court did not abuse its discretion in finding that exposure to paternal grandparents would have a harmful effect on the best interest of the children when evidence in record supported that decision).

[10] *See Ward*, 289 Ga. at 250 (finding that, in addressing motion for contempt, trial court abused its discretion when it amended visitation provision in final decree to provide that mother "shall not have any overnight male guests while the minor children are present"); *Mongerson*, 285 Ga. at 555-56 (2) (trial court in final decree ordered that, in husband's limited visitation, he be "prohibited from exposing the children to his homosexual partners and friends"); *Arnold*, 275 Ga. at 354 (trial court, in final decree, prohibited children from contact with certain named friend of wife without evidence that exposure would have an adverse effect on the best interests of the children); *Brandenburg*, 274 Ga. at 183-84 (trial court, in final judgment, awarded father with visitation, but under that provision he was precluded from exercising those rights in the presence of his girlfriend, even if they should marry). *But see Turman*, 235 Ga. App. at 243 (settlement agreement entered into by parties and incorporated into decree by trial court included visitation provision that prohibited mother from exercising those rights in the presence of a named individual "or any other African-American male," but provision held unenforceable because such provisions "cannot be based solely upon racial considerations").

parents to act in the best interests of their children."[11] Thus, in the absence of any evidence rebutting same, we presume that both Toby *and* Darby were acting in the best interests of their children when they agreed (with the advice of counsel no less) to enter into a settlement agreement that included the overnight-guest provision, which, again, does not violate public policy because it is neither overly broad nor unduly burdensome. Suffice it to say, if Darby did not believe that such a provision was in the best interests of her children, she should not have agreed to its inclusion in the settlement agreement.[12]

---

[11] *Parham v. J. R.*, 442 U.S. 584, 602 (III) (b) (99 SCt 2493, 61 LE2d 101) (1979); *see also Troxel v. Granville*, 530 U.S. 57, 68-69 (II) (120 SCt 2054, 147 LEd2d 49) (2000) (noting that there is a presumption that fit parents act in their children's best interests, and that there is normally no reason for the State to inject itself into the private realm of the family to further question fit parents' ability to make the best decisions regarding their children); 2 ST. GEORGE TUCKER, BLACKSTONE'S COMMENTARIES: WITH NOTES OF REFERENCE TO THE CONSTITUTION AND LAW OF THE FEDERAL GOVERNMENT OF THE UNITED STATES AND OF THE COMMONWEALTH OF VIRGINIA 447 (1803); 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 190 (1827).

[12] *See Burns v. Burns*, 253 Ga. App. 600, 602 (560 SE2d 47) (2002) (concerning a consent order that included a provision that "[t]here shall be no visitation nor residence by the children with either party during any time where such party cohabits with or has overnight stays with any adult to which such party is not legally married or to whom party is not related within the second degree," and holding that the mother waived certain rights to privacy of intimacy and that if she "wanted to ensure that her civil union would be recognized in the same manner as a marriage, she should have included language to that effect in the consent decree

Accordingly, for all of the foregoing reasons, we conclude that the trial court did not err in enforcing the overnight-guest provision or in holding Darby in contempt for violating same,[13] and we affirm the court's judgment.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur*.

---

itself").

[13] *See Simmons v. Williams*, 290 Ga. App. 644, 648 (3) (660 SE2d 435) (2008) (physical precedent only) (holding that overnight-guest provision was "clearly intended to preclude potential sexual relations by either of the parties with unwed partners in the presence of the children, a type of limitation within the discretion of the trial court").