**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 23, 2022**

# In the Court of Appeals of Georgia

A21A1575. BECKMAN v. BECKMAN.

BARNES, Presiding Judge.

Keely B. Beckman ("mother") and John A. Beckman ("father") are the divorced parents of one minor child. This appeal arises out of the trial court's final order modifying the father's visitation to prohibit any contact between the child and the father's new wife. The father contends that the trial court abused its discretion by imposing an absolute prohibition on all contact between his child and his new wife when there was no evidence that exposure to her would adversely affect the child's best interests. For the reasons discussed more fully below, we agree with the father that the trial court abused its discretion in placing a blanket prohibition on any contact, and we vacate the final order and remand for further action consistent with this opinion.

Construed in the light most favorable to the trial court's decision,[1] the record reflects that the mother and father were married in 2011 and had a son, J. H. B., who was born in 2018. In 2019, the father began having an extramarital affair with his sister-in-law, Lauren Bethune, who was married to the mother's brother. The mother learned of the affair in 2020, and she and the father decided to divorce. On April 8, 2020, the mother and father met at the office of the mother's attorney[2] and executed a settlement agreement that incorporated by reference a parenting plan agreed to by the parties. The parties agreed that they would have joint legal custody of J. H. B., that the mother would have primary physical custody, and that the father would be entitled to certain visitation. The parties also agreed to a restrictive prohibition in the parenting plan that addressed contact between Bethune and J. H. B.:

> The parties agree that the female person known as [Bethune] shall never be in the presence of the minor child unless one of the parties is physically present, or unless an adult designated by the parties (such as a grandparent) is physically present. Under no circumstances may [Bethune] be alone with the child. ("Visitation Restriction")

---

[1] See *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019).

[2] The father was not represented by counsel in the settlement negotiations.

On May 20, 2020, the trial court entered a final judgment and decree of divorce that adopted and incorporated by reference the settlement agreement and parenting plan consented to by the parties.

At the time of the settlement, the father and Bethune were no longer involved in a relationship, and the father informed the mother that the affair was over. However, shortly thereafter, the father and Bethune resumed their relationship, and then, after breaking up again for a short period, they ultimately reunited and stayed together.

Bethune and her husband, who had three minor daughters, divorced in June 2020. Initially, Bethune had primary physical custody of her daughters, but she and her ex-husband later agreed to a shared custody arrangement that was approved by the trial court.

After the divorces, Bethune learned that she was pregnant with the father's child, and the father and Bethune decided to get married. In July 2020, the mother filed a complaint to modify visitation.[3] In her complaint, as amended, the mother

---

[3] See generally OCGA § 19-9-3 (b) ("In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any

sought to have the Visitation Restriction expanded to prohibit all contact between Bethune and J. H. B. The father answered and filed a counterclaim seeking to have visitation modified to allow for unsupervised contact between Bethune and J. H. B.

In September 2020, the trial court entered a temporary order prohibiting all contact between Bethune and J. H. B. Later that month, the mother's attorney sent a letter to counsel for the father and Bethune warning that if they got married, it would exacerbate the visitation issues and would cause them to "run the risk of losing rights to their children."

Shortly before the final hearing on the requests for modification, the father and Bethune got married and moved in together. Based on the custody arrangement between Bethune and her ex-husband, her three daughters began living with Bethune and the father for three days each week. Bethune's pregnancy due date was a few weeks away at the time of the final hearing.

At the final hearing conducted in February 2021, the trial court heard testimony from the mother, father, and Bethune regarding the affair and the facts leading up to and after the mother and father's execution of the settlement agreement and divorce.

material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment. . . .").

4

Among other exhibits, the mother also introduced into evidence a profile that Bethune posted on a dating app during the brief time period when Bethune and the father had broken off their relationship. The dating profile included a photograph of Bethune with her three minor daughters and a caption that read, "Lauren, 32, I am an active mom to 3 sweet girls who can also be handfuls (I'm not going to sugar coat it, so swipe accordingly)."

On March 11, 2021, the trial court entered its final order modifying and expanding the Visitation Restriction to prohibit any contact between Bethune and J. H. B. In its order, the trial court found that the father "engaged in a long-term adulterous relationship with his sister-in-law," and that despite having

> full knowledge that any romantic relationship with [Bethune] in the future would complicate his custodial and visitation rights, especially in light of the [Visitation Restriction] . . . , he willfully chose to renew that relationship shortly after signing the settlement agreement, and willfully impregnated [Bethune] thereafter. He then willfully chose to marry [Bethune], despite his full knowledge of the statistical likelihood of the failure of that marriage, and more importantly the complications this would impose upon the issues being litigated herein.

The trial court further found that these choices demonstrated "deep character flaws" and a "lack of insight and judgment" by Bethune and the father, and the court

determined that "[t]hey have both chosen self-gratification over the needs of their children, and have demonstrated a lack of insight and judgment regarding the potential effects of their actions on others, including their own children." The trial court also found that Bethune exhibited "profoundly poor judgment" when she "posted a picture on a sex site of herself and her three minor daughters."[4] Based on its findings, the trial court concluded that Bethune was "not to be trusted" and that exposure of J. H. B. to Bethune would not serve the child's best interest. Additionally, the trial court found that the "likely instability and chaos that the relationship between [the father and Bethune] will spawn" justified expanding the Visitation Restriction, and that such an expansion was "narrowly tailored to protect the minor child from the emotional and moral harm risk that [Bethune] poses." Finally, the trial court found that even if there had been no showing that exposure to Bethune would harm J. H. B., the mother was not required to show such harm because the court was expanding upon the Visitation Restriction that had been consented to by the father "to assure it's intent" was fulfilled.

1. On appeal, the father contends that the trial court abused its discretion by expanding the Visitation Restriction to prohibit any contact whatsoever between

---

[4] See footnote 4, infra.

Bethune and J. H. B. because there was no evidence that such contact would have an adverse effect on the child. We agree.

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child['s] best interest. A trial court's decision regarding a change in . . . visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion." (Citation and punctuation omitted.) *Coppedge v. Coppedge*, 298 Ga. 494, 499 (3) (783 SE2d 94) (2016). But a trial court's discretion in this regard is not unlimited. "It is the express policy of this state . . . to encourage parents to share in the rights and responsibilities of raising their child after such parents have separated or dissolved their marriage or relationship." OCGA § 19-9-3 (d). To that end, our Supreme Court has held that "a trial court abuses its discretion when it places an unnecessarily burdensome limitation on the exercise of a parent's right of visitation." *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001). And with respect to a child's exposure to a third party during visitation with a non-custodial parent,

> a trial court has discretion to prohibit the exercise of visitation rights by . . . [the] parent in the presence of certain people [only] if the evidence demonstrates the children have been exposed to inappropriate conduct

involving the specified persons or that exposure to the prohibited persons would adversely affect the children.

*Mongerson v. Mongerson*, 285 Ga. 554, 555 (2) (678 SE2d 891) (2009), disapproved in part on other grounds by *Simmons v. Simmons*, 288 Ga. 670, 672 (3), n. 4 (706 SE2d 456) (2011). See *Arnold v. Arnold*, 275 Ga. 354, 354 (566 SE2d 679) (2002); *Brandenburg*, 274 Ga. at 184 (1). "In the absence of any evidence that exposure to a third party will have an adverse effect on the best interests of the children, a trial court abuses its discretion by prohibiting a parent from exercising his or her custodial rights in that person's presence." *Arnold*, 275 Ga. at 354.

In the present case, there was no evidence that Bethune and the father engaged in any inappropriate conduct in the presence of J. H. B. Rather, the trial court clearly based its determination that J. H. B. would be adversely affected by exposure to Bethune on the fact that Bethune and the father's relationship began as an extramarital affair; that they were previously related by marriage; that they renewed their relationship after the divorce settlement agreement was executed and then conceived a child; and that they married in the midst of the litigation over modifying

8

visitation.[5] But "the primary consideration in determining . . . visitation issues is not the sexual mores or behavior of the parent, but whether the child will somehow be harmed by the conduct of the parent." *In the Interest of R. E. W.*, 220 Ga. App. 861, 863 (471 SE2d 6) (1996). The focus must be on the needs of the child, not the faults of the parents. Id. at 864. "[I]n some instances a parent's 'immoral conduct' might warrant limitations on the contact between parent and child; but only if it is shown that the child is exposed to the parent's undesirable conduct in such a way that it has or would likely adversely affect the child." Id. at 863. And any alleged "deleterious effect on the child[ ] [must be] beyond that normally associated with divorce and remarriage." *Brandenburg*, 274 Ga. at 184 (1).

Here, there was no evidence in the record that mere exposure to Bethune would harm J. H. B. Indeed, the mother admitted at the final hearing that J. H. B. had contact with Bethune before the extramarital affair and that she had no concerns with such contact prior to learning about the affair. Moreover, Bethune had been granted shared

_____

[5] The trial court also found that Bethune used a photograph that included her daughters for her profile on a "sex site." However, there was no evidence presented at the hearing to support the trial court's finding that the dating app on which the photograph was placed was a "sex site." Nor was there any evidence that the posting of the profile, which occurred during the short time period when Bethune and the father had broken up, had or will have any adverse affect on J. H. B.

9

custody of her own daughters without any restrictions. And while the trial court found that Bethune's relationship with the father would likely lead to "instability and chaos" from which J. H. B. needed to protected by expanding the Visitation Restriction, a court cannot place restrictions on visitation based on mere speculation as to what might occur in the future. See *Williams v. Williams*, 295 Ga. 113, 114 (1) (757 SE2d 859) (2014) (trial court abused its discretion by placing limitation on the ability of the father's new wife to drive his child, where the mother's testimony "that she had heard that [the father's] new wife was taking medication and worried about her ability to drive" was speculation). Accordingly, given that there was no evidence that contact with Bethune would adversely affect J. H. B., the trial court abused its discretion in imposing a blanket prohibition on such contact, which placed an unnecessary burden on the father's exercise of his visitation rights.[6] See *Arnold*, 275 Ga. at 354 (concluding that trial court erred in prohibiting children from having any exposure to the mother's friend, where there was no evidence that the relationship between the mother and her friend "was or will be harmful to the children, or that they ever

---

[6] As noted by the father, if the blanket prohibition were to remain in effect, the father or Bethune would have to stay at a hotel or other separate location whenever the father had overnight weekend, summer, or holiday visitations with J. H. B. The prohibition also clearly would make it much more difficult to have family gatherings involving J. H. B. and all of his young step-siblings.

10

engaged in any inappropriate conduct in the presence of the children"); *Brandenburg*, 274 Ga. at 184 (1) (concluding that trial court erred in prohibiting contact between children and their father's live-in girlfriend, given that there was no evidence that such contact would adversely affect the best interests of the children); *In the Interest of R. E. W.*, 220 Ga. App. at 863-864 (concluding that trial court erred in restricting father's visitation based on his alleged "immoral conduct," where there was no evidence of any harm to the child); *Hayes v. Hayes*, 199 Ga. App. 132, 133 (404 SE2d 276) (1991) (concluding that trial acted within its discretion in declining to modify custody, where "[t]here was evidence that both parties were involved in meretricious relationships in the presence of the child, but no evidence that either party committed sexual acts in the presence of the child"). Cf. *Mongerson*, 285 Ga. at 556 (2) (upholding trial court's prohibition on contact between the children and their paternal grandparents during the father's visitation, where "[t]here was evidence the grandparents had been physically and emotionally abusive of the children, and [the father] acknowledged he had not fulfilled his promise to never leave his children alone with his parents").

In modifying the Visitation Restriction to prohibit all contact with Bethune, the trial court also concluded in the alternative that the mother was not required to show

11

that exposure to Bethune would harm J. H. B. because the father consented to the Visitation Restriction as part of the divorce settlement agreement and the court was fulfilling the intent of that restriction by expanding it. It is true that a trial court may enforce a visitation restriction even when there is no showing of harm justifying such a restriction, where the parties consented to inclusion of the restriction in the divorce decree. See *Norman v. Norman*, 329 Ga. App. 502, 506 (765 SE2d 677) (2014). See also *Burns v. Burns*, 253 Ga. App. 600, 602 (560 SE2d 47) (2002) (concluding that the mother waived her challenge to the visitation restriction on the ground that it violated her right to privacy of intimacy, where the mother agreed to the consent degree that included the restriction). But that is not the situation here, where the trial court modified and expanded the Visitation Restriction consented to by the parties, and there is no evidence that the father ever would have agreed to such an expansion. See *Norman*, 329 Ga. App. at 506 (distinguishing cases in which the restrictive visitation provision "was entered into by consent of the parties prior to the trial court's entry of its final order" from "cases in which the trial court modifies an existing agreement" between the parties) (emphasis omitted). See also *Ward v. Ward*, 289 Ga. 250, 251 (1) (710 SE2d 555) (2011) (requiring a showing of harmful effect on the children where trial court amended the visitation provision in the divorce

12

decree to prohibit exposure of the children to certain third parties). Consequently, the trial court erred in concluding that no showing of harm was required to justify expansion of the Visitation Restriction.

In sum, we conclude that the trial court abused its discretion in modifying the Visitation Provision to prohibit all contact between Bethune and J. H. B. As a result of that error, the trial court did not separately consider the father's counterclaim seeking to modify the Visitation Provision to allow for unsupervised contact between Bethune and J. H. B. We therefore vacate the trial court's order and remand the case to the trial court with instructions to deny the mother's request to modify the Visitation Provision and to rule on the father's counterclaim seeking modification of the Visitation Provision.

2. We need not address the father's remaining enumeration of error in light of our decision in Division 1.

*Judgment vacated and case remanded with direction. Gobeil and Markle, JJ., concur.*